14213

ROBISON v. ATLANTIC COAST LINE R. CO. *ET AL.*

(184 S. E., 96)

*Mr. F. L. Willcox,* for appellant,

*Mr. W. Stokes Houck,* for respondent,

January 30, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

From a consideration of a petition for rehearing filed in this case, it appears that certain language used in the original opinion heretofore filed might be deemed to have been considered by the Court as controlling, and as a basis for the conclusion reached therein. Therefore, in order to clarify the opinion, certain portions have been deleted. This opinion is substituted in place of the original opinion heretofore filed, the prior opinion withdrawn from the files, and the petition for a rehearing denied.

James Henry Robison, a Negro boy 16½ years of age, was killed by the regular passenger train of the appellant at Florence, while he was attempting to cross its tracks where North Dargan Street intersects with the railroad tracks. The plaintiff, as administratrix, brought this action to recover damages for his death. The Atlantic Coast Line Railroad Company and E. A. Wall, who was the engineer in charge of the locomotive at the time of the accident, were both made defendants.

In the complaint, the defendant Wall was charged with actionable negligence, recklessness, and willfulness: (a) In running the train at an excessive and unnecessarily rapid

rate of speed; (b) in not having the train under control; (c) in failing to keep a lookout; and (d) in failing to give the common-law signals or the statutory signals required by due care.

There were other specifications, but they are all covered by these four.

The Atlantic Coast Line Railroad Company was in the complaint charged with negligence, recklessness, and willfulness: (a) In failing to reduce the speed of the train, and, on the contrary, in running the train at a reckless rate of speed; (b) in failing to keep a lookout; (c) in failing to have the train under proper control; and (d) in failing to give the signals required by statute.

In addition to the acts of negligence charged against both · defendants, the defendant Atlantic Coast Line Railroad Company was charged with negligence, recklessness, and willfulness: (1) In maintaining a dangerous crossing; (2) in maintaining a depot in close proximity to its tracks and to Dargan Street; (3) in not having a watchman or flagman at the crossing, and in not having, in the absence of a flagman, some other safeguard for the protection of travelers using the crossing.

The jury, under a charge of the trial Judge to the effect that the defendant Wall was in no sense responsible for maintaining a flagman, and was in no sense responsible for maintaining the depot, but was responsible for the speed of the train, for keeping a lookout, and for giving signals, found a verdict against the railroad company alone.

The Atlantic Coast Line Railroad Company appeals to this Court upon three exceptions, the second of which was abandoned.

The first exception imputes error to the trial Judge because of his refusal to direct a verdict in favor of the railroad company, upon the ground that no reasonable inference could be drawn from the testimony other than that the injury was due to the negligence or gross negligence of plaintiff's intestate in going upon a railroad track

immediately in front of an approaching train, under the circumstances detailed in the testimony.

In the view we take of the case, it is necessary to consider only this first exception, and, for this purpose, it becomes necessary to review the testimony, and in so doing to consider it in the light most favorable to the plaintiff.

The accident, which resulted in the death of James Henry Robison, occurred on May 17, 1934.

Evans and Dargan streets constitute the two principal business streets of the City of Florence, and they run at right angles to each other. Evans Street runs east and west, and Dargan Street runs north and south. Front street runs parallel with Evans, and is one block north of same; it runs at right angles to Dargan, and along the south side of the right of way of the railroad company, which runs east and west. The street running parallel with Dargan, and one block to the west, is Irby. Between Front Street and the tracks of the appellant, and between Dargan and Irby streets, the railroad company maintains its freight depot, which covers the entire block, the eastern end of which is 48 feet or 16 yards from Dargan Street. Where Dargan Street crosses the railroad there are five separate tracks. Dargan Street crossing is between the passenger depot on the east and the freight depot on the west. The crossing in question is in the heart of the business section of the city, where there is unquestionably a great amount of travel.

On May 17, 1934, Herman Gregg, a Negro boy about 17 years of age, met the plaintiff's intestate in the business section of the city on Evans Street. Herman Gregg was on his way to school, and the plaintiff's intestate was going from the white fish house where he worked, on Evans Street, to the ice plant of the Florence Ice & Fuel Company, located north of the railroad, and near the Dargan Street crossing. The plaintiff's intestate was riding a bicycle, and invited Herman Gregg to ride with him. Gregg then got upon the seat of the bicycle and began pedaling the same, while plaintiff's intestate was riding on the crossbar between the seat

and the handlebars. When they came to the intersection of Evans and Dargan streets, they turned north on Dargan Street and rode down the same to Front Street, and then attempted to cross the appellant's railroad tracks, where the plaintiff's intestate was killed by one of appellant's passenger trains going east and coming from Augusta through Florence.

It is alleged in the complaint that prior to January 1, 1934, the appellant maintained a flagman at the Dargan Street crossing. It is admitted in the answer that the allegation is true, and that some time prior to May 17, 1934, when plaintiff's intestate was killed, the flagman or watchman was removed by permission of city council. The jury on request of appellant's counsel viewed the scene of the accident.

As there was some evidence from which it might possibly be inferred that the location of the freight depot obstructed or partially obstructed the view of the main track towards the west and that the presence of a flagman was necessary in the exercise of due care, the consideration of the appeal from the order overruling the motion for a directed verdict must begin with the assumption that the ngeligence of the defendant was a proximate cause of the death of Robison.

We shall therefore examine the testimony with reference to its bearing upon the gross negligence of the intestate and of Herman Gregg, contributing to the death of the deceased as a proximate cause.

> Of course, under the facts and circumstances of this
> ■ case, any negligence of which Gregg was guilty must
> also be imputed to the plaintiff's intestate.

The testimony of Gregg tends to show that they reached the railroad crossing at about 8 o'clock a. m. Gregg was unable to estimate the speed at which the bicycle was going, but stated that they were not going very fast, because he had "too much load to ride fast." As Robison sat on the crossbar, he was constantly facing west, which is the direction from which the defendant's train was coming. Gregg

testified that, as they approached the railroad crossing, "I looked out next to the freight depot to see if any train was coming, and I looked next the passenger station, and I didn't see any. I didn't hear any bell ringing or whistle blowing, and I started on across. Before I got across the train was right up on me." He was unable to estimate how far the bicycle was from the track the passenger train was on when he looked to see if it was coming, but stated that he was not so far from it; that he was between Front Street and the railroad track when he looked to see if the train was coming. When the collision took place, Gregg was thrown clear of the track. Robison was thrown under the train and was killed. Gregg stated that the freight depot obstructed his view when he looked to the west, the direction from which the train was coming. He further testified that he used North Dorgan Street, and crossed over the railroad every day in going to school, and that he had been attending school for about a year; that his school did not begin in the morning until about 8:45 o'clock; that he usually crossed over this intersection after the appellant's passenger train had passed by, but that on the morning of the accident he was earlier than ordinary in going to school; that when he first saw the train, it had already passed the corner of the freight depot; that before he crossed the house track, which was the first track he reached, he looked, but saw no train.

Mr. Welchel, a civil engineer of the City of Florence, testified for the plaintiff with reference to the location and the number of tracks and with reference to measurements made by him. From his testimony it appears that the freight depot, which, as alleged in the complaint, obstructed the view to the west, is located 48 feet from the western curb of Dargan Street, which is 36 feet wide, and that the depot is separated by a distance of 13½ feet from the center line of the first track to the north, and 28.5 feet from the center line of the main track, which was the track on which the accident occurred, and that the first track to the north was 65 or 70 feet from Front Street, which street runs parallel with de-

fendant's right of way, being located on the south side thereof. He further testified as follows:

"Q. If a person travelling North on Dargan Street, at a distance of eighty feet from the main line track and in the center of Dargan Street, how far could he see down that main line track? A. See about 110 feet.

"Q. If he was a hundred feet away from the main line track and were to look to his left, how far down the track could he see? A. If he was on the right hand side of the street he could see eighty-seven feet.

"Q. If he was on the left, how far could he see? A. If he was on the right he could see about ninety-one feet, and on the left he could see about eighty-seven feet."

Other facts necessary to an understanding of the case will be stated in the opinion.

It follows from the testimony of Mr. Welchel that the nearer one approached the crossing the more extended would be his line of vision toward the west, so that, as these boys steadily drew closer to the crossing, their view down the main line track proportionately and constantly increased with every turn of the bicycle wheels.

Mr. E. F. Scott, a witness for the defendant, testified that at the time of the accident he was on the southeastern corner of Dargan and Front Streets, right next to the railroad, and witnessed the collision. He stated: "A. I was standing there, waiting on Mr. Sallenger, looking out there on the street, first one side and then the other, expecting him every minute. I heard a whistle blow, train whistle blow, and I looked towards the railroad track. At that time two boys passed me on a bicycle and one said 'We can make it; let's go.' They rode up, and as they got up close to the track, you know how they rear up on the pedals and pedal—he did that, and when he got on the track, he cut that way, thought he could make it. He cut down the track, and cut across, but he didn't make it, and the train caught him. The big boy went across the track, and little boy went under it, under the train."

A Negro witness, Monroe Hemingway, called to the stand by the plaintiff, was approaching the crossing from the passenger station side, which is located on the eastern side of the intersection, and he gave this description of the accident:

"Q. Did you see the boys before they were hit? A. When I saw the boys, what attract my attention, I seen the boys when they got up on the track and they didn't seem to see the train. The boys got on the track and seemed to be excited, and the boy turned his wheel a little to the right, like he was going to go across the track. After he crossed the track where it was filled in there, he ran off the track and cut in where it was not filled in. The front wheel of the bicycle struck the track and threw him on the track, and threw the one pedaling—he fell over the wheel and the one on the cross-bar fell in the track.

"Q. Didn't he turn when he got up and saw the train— he turned a short distance toward the passenger station? A. When he got on the track the train was so close to him he seemed to be excited."

There is also testimony going to show that at the time of the accident it was raining and misty, but there is no evidence that this created a condition which prevented easy visibility.

It is conclusively shown that Herman Gregg was thoroughly familiar not only with the situation at the railroad crossing, which he crossed every day on his way to school, but also that he knew the scheduled arrival of the railroad company's passenger train. Another significant feature of the testimony which must be kept in mind is this, that the deceased, from the position in which he was sitting on the crossbar of the bicycle, constantly faced west, which is the direction from which the passenger train was coming. The bicycle was going, according to one witness, at a speed not exceeding five miles per hour. It would certainly seem reasonable to conclude that, if Robison had exercised the slightest degree of care, he could have seen and heard the approaching passenger train in time to have jumped off the

bicycle. If Herman Gregg had exercised the slightest degree of care, at the speed at which he was going, he, too, had ample opportunity to either stop the bicycle or else turn the bicycle aside.

It is not possible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case. The Court will not decide it as one of law if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. This we have decided time and again. For under such circumstances the question clearly falls within the province of the jury.

If, however, it clearly appears from the evidence that there was contributory negligence or gross contributory negligence proximately entering into and contributing to the accident at the time of its occurrence, it is the duty of the Court to so find as a matter of law.

It has been well said that it is always train time at a railroad crossing. The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train. *Chisolm v. Seaboard Air Line Railway Company,* 121 S. C., 394, 114 S. E., 500. And, because of the danger, there is imposed upon such person the duty of reasonable care and caution and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and, subject to applicable qualifications and limitations, he is required at least to look and to listen for an approaching engine or train before venturing to cross the track; and, if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and, if such failure results in injury, he is left without a remedy.

The rule was stated in *Chisolm v. Seaboard Air Line Railway Company, supra,* that he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, "and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective."

It cannot be successfully contended, under this rule and under the testimony, that the plaintiff's intestate was effectively prevented from observing the approach of the train by reason of the location of the freight depot. The evidence negatives any such conclusion. The question is, could either Robison or Gregg, by the reasonable use of their senses, exercising ordinary care, under the circumstances surrounding them, and in the performance of their duty to look and to listen, have discovered the proximity of the approaching train in time to have avoided the accident? *Cable Piano Co. v. Railway,* 94 S. C., 143, 77 S. E., 868; *Bamberg v. Railroad Co.,* 72 S. C., 389, 51 S. E., 988, 28 R. C. L., 1041.

What qualifying or extraneous circumstances existed in this case, which would relax the rule requiring Gregg and Robison to look and to listen? There is no evidence whatever that there was any other train in the railroad yard which might have distracted their attention; no evidence of passing automobiles, with their attendant noise; no evidence of hustle and hurry of traffic of any kind. So far as the testimony shows, they alone at the time of the accident were attempting to make a crossing. If they had looked when ordinary care required them to look, they would have seen the approaching train in time to have avoided the collision. If they had listened, they could have heard the whistle and the bell. There is no evidence that they were lacking in mental capacity or that they suffered from impaired vision or imperfect hearing; the contrary is shown.

It was held in *Osteen v. A. C. L. R. R. Co.,* 119 S. C., 438, 112 S. E., 352, that, if a truck driver attempted to cross immediately in front of an approaching train, although he

saw the train, or by exercising the slightest degree of care could have seen and heard it, and to a person of ordinary prudence such an attempt to cross was obviously dangerous, reckless, or wanton, he was guilty of gross contributory negligence, recklessness, and wantonness as a matter of law.

Subject to applicable qualifications and limitations, where a traveler about to enter upon a crossing has an opportunity, by exercising his sense of hearing or sight, to discover an approaching train in time to stop in a place of safety, it is his duty under such circumstances to look and listen, and, if he fails to do so, or fails or neglects, as he approaches the crossing, to see or discover an approaching train dangerously near the crossing, which the evidence shows he could or must have discovered, in the exercise of ordinary care, had he looked or listened, such failure to look and listen amounts not only to negligence, but to gross negligence as a matter of law. *Bain v. Northwestern R. R. Co.,* 120 S. C., 370, 113 S. E., 277; *Gosa v. Southern R. Co.,* 67 S. C., 347, 45 S. E., 810, 52 C. J., 320.

We think the correct rule is expressed in the following language taken from 52 C. J., 487: "Where the evidence clearly shows that the injured person's opportuniy for seeing or hearing the approaching train at the time of the accident was such that he could not fail to have seen or heard it in time to avert the accident if he had used due care in looking or listening, his contributory negligence in this respect should not be submitted to the jury, but is a question for the Court, and it should direct a verdict for the defendant, grant a nonsuit, dismiss, or otherwise dispose of the case without the intervention of the jury, even though plaintiff and his witnesses testify that he stopped, looked and listened, or that he looked or listened, but did not see or hear the train."

We add, however, that the testimony must be susceptible of no other reasonable inference.

This text finds overwhelming support in the numerous cases cited thereunder.

Even though the view of the railroad track be partially obstructed at a crossing, that fact does not relieve the traveler of the obligation to look and listen for an approaching train. The very fact of the existence of such obstruction, and particularly when it is known to the traveler, imposes additional care and caution upon him when approaching the track. The right of a railroad company at a highway crossing is superior to the right of a traveler upon a highway, but this superior right does not relieve the company of reasonable and ordinary caution to prevent accidents at such crossing, and this degree of care may be affected by obstructions which prevent the track from being seen as a train approaches. Both the traveler and the company are charged with the same degree of care; the one to avoid being injured, and the other to avoid inflicting injury. The care of each must be commensurate with the risk and danger involved. The greater the risk, the greater the care. *Chisolm v. Seaboard Air Line Ry. Co., supra; Edwards v. Railway,* 63 S. C., 271, 288, 41 S. E., 458; *Johnson v. S. A. L. Ry. Co.,* 163 N. C., 431, 79 S. E., 690; Ann. Cas., 1915-B, 598; *Southern Railway Co. v. Hansbrough's, Adm'x,* 107 Va., 733, 60 S. E., 58.

According to the testimony of the witness Scott, which is not contradicted, when the deceased and Gregg passed him, Gregg, who was operating the bicycle, rose up on the pedals and increased his speed, at a time when the train was approaching the crossing, and either the deceased or Gregg made the statement, "We can make it; let's go."

The inference, and the only reasonable inference, to be drawn from this evidence, and the other evidence in the case, is that the speed was increased when the two boys became conscious of the fact that the train was approaching, and that they attempted to clear the crossing before the train reached that point. The evidence makes a clear case of gross contributory negligence on their part. Exercising ordinary prudence, they might have stopped or turned aside, but, if instead of doing so, they attempted to race with a locomo-

tive, they did so at their own risk, and the defendant company is not responsible for the consequences of such conduct. Gregg says that he looked and listened for the approach of the train before he crossed what is known as the house track, which is the first track north of Front Street. If he looked and listened at that point it is utterly incredible under the evidence and the physical facts that he could have failed to hear and to see the train.

In this case there was no issue for the jury to pass ▮▮ upon. As a matter of law, the plaintiff's intestate, through his own gross contributory negligence and that of Gregg, contributed to the accident through a failure to observe those ordinary rules which the common experience and good sense of men teach them their conduct should be governed by when approaching a railroad crossing. The absence of a flagman from the crossing did not dispense with the necessity of vigilance on their part. The rule has long been settled that negligence on the part of a railroad company in omitting to give warning of the approach of trains by a flagman does not excuse travelers from exercising ordinary care and prudence on their part when crossing its tracks. 52 C. J., 357; *Cullen v. President, etc., of Delaware & H. Canal Co.,* 113 N. Y., 667, 21 N. E., 716; *Wallace v. Central Vermont R. Co.,* 138 N. Y., 302, 33 N. E., 1069.

Ordinary prudence might require a particular crossing to be flagged at a certain time and not at others, on account of the circumstances or extraordinary danger, and this has been held ordinarily a question for the jury. *Callison v. C. & W. C. R. Co.,* 106 S. C., 123, 131, 90 S. E., 260; *Matthews v. Railroad Co.,* 67 S. C., 499, 513, 46 S. E., 335, 65 L. R. A., 286; *Langley v. Southern Ry.,* 113 S. C., 45, 56, 101 S. E., 286; *Miller v. A. C. L. R. Co.,* 140 S. C., 123, 138 S. E., 675. But under the facts and circumstances of this case no issue on this point should have been submitted to the jury.

In the instant case, as in *Callison v. C. & W. C. Ry. Co., supra,* there is no statute or ordinance requiring the defendant railroad company to flag the Dargan Street crossing;

and it was held in the *Callison case* that negligence cannot be predicated upon the failure to do so, unless a flagman was required in the ordinary prudent operation of the railroad. Here the evidence shows that, even if it could be held in this case that the railroad company was guilty of negligence or of gross negligence in failing to have a flagman, and in maintaining a dangerous crossing, recovery cannot be had against it because of the gross and willful contributory negligence of the deceased and of Gregg.

A verdict should have been directed in favor of the railroad company.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded for entry of judgment in favor of the defendant Atlantic Coast Line Railroad Company under Rule 27.

MESSRS. JUSTICES BONHAM and BAKER concur.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER dissent.