14916

WANNAMAKER v. SOUTHERN RY. CO.

(3 S. E. (2d), 811)

December, 1937.

*Messrs. Zeigler & Brailsford* and *A. J. Hydrick,* for appellant,

*Messrs. Adam H. Moss, James A. Moss* and *Frank G. Tompkins,* for respondent,

July 12, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is an action for damages arising out of a collision between a truck owned by the plaintiff, and driven by his minor son DeWitt, and a train of the Southern Railway Company. The collision occurred in the City of Orangeburg, at the crossing of Peaslee Street and the tracks of the defendant.

At the conclusion of all the testimony, defendant moved for a directed verdict upon four grounds, viz.:

"1. That there is no evidence in the case tending to show any breach of duty owed by the defendant to plaintiff or to plaintiff's son who was driving plaintiff's truck at the time of the collision, and no evidence of any negligence, gross negligence or recklessness on the part of the defendant that was the proximate cause of the said collision   *   *   *.

"2. That the evidence is insufficient to warrant a reasonable jury in finding a verdict for plaintiff.

"3. That the only reasonable inference of which the evidence is susceptible is that plaintiff's son, the driver of plaintiff's truck at the time of the collision, attempted to go over and went upon the crossing without stopping, looking or listening before doing so and without exercising the slightest degree of care for his safety or for the safety of the truck he was driving, and that such conduct on his part was the direct and proximate cause of his injuries and the damage to plaintiff's truck.

"4. That the only reasonable inference to be drawn from the evidence is that plaintiff's son, the driver of plaintiff's truck at the time of the collision, negligently and recklessly drove the said truck upon the Railway Company's track in front of an approaching train dangerously near the crossing, which he could not fail to have seen or heard in time to avoid collision therewith if he had exercised the slightest care in looking or listening, and that such conduct on his part was the sole or at least a contributing proximate cause of the said collision, without which the said collision would not have occurred."

After argument, his Honor delivered his ruling orally from the bench. His concluding utterance was as follows:

"From the uncontradicted testimony coming from his own witnesses, from the photographs introduced in evidence, and the other witnesses as to the locus, there could be but one reasonable inference drawn and that is had DeWitt Wannamaker exercised the slightest degree of care he could have seen, would have seen, the approaching train before going on the crossing and would have seen the approaching train in ample time to have avoided the collision, and that, as a matter of law, he is guilty of both gross contributory negligence and recklessness amounting to wilfulness, without which the collision and resulting injury to his person and the damage to plaintiff's automobile or truck would not have occurred.

"So, under the law, I am compelled to direct a verdict for the defendant."

We shall not review all of the evidence; it suffices to say that we concur in the epitome of it given by the Circuit Judge.

Appellant seeks to avoid this conclusion and to argue that the question should have been submitted to the jury to determine whether under the circumstances attending the collision, the attention of DeWitt Wannamaker was so distracted by occurrences and conditions created by defendant as to excuse him from giving that strict attention which required that he look and listen before he went upon the crossing.

The force of this argument is nullified by the fact that there is no evidence to show that the attention of DeWitt Wannamaker was attracted or diverted by anything done by defendant, which would make him careless or oblivious of the danger of going on a railroad at its crossing of a street. On the contrary, it appears from the testimony of DeWitt that he was aware of and alive to such danger. On his di-

rect examination, he said, in answer to the following question propounded by plaintiff's counsel:

"Q. What, if anything, did you think about the danger at that point? A. I thought more of the danger from approaching cars, because I had just travelled that road for one half mile, where, if the train had been approaching it would have had to travel at least a mile and a half while I was traveling a half a mile on that road."

Now there can be no doubt that the train was approaching. DeWitt testifies that after delivering the article of merchandise, he backed out on College Avenue, looked both ways, up and down the railroad, and did not see anything. It is a legitimate deduction from the evidence above quoted that he thereupon dismissed the train from his mind, never looked or listened for it any more, felt satisfied in his mind that he could cross the track in safety and took the risk. He lived in the City of Orangeburg; had lived there for fourteen years; was familiar with its streets and the railroad crossing; is chargeable with knowledge that there would be trains on the track at about the time he tried to cross.

As was quoted by Judge Bellinger from the opinion of this Court in the *Robison case (Robison v. Atlantic Coast Line R. Co.,* 179 S. C., 493, 184 S. E., 96, 100), "It is always train time at a railroad crossing."

Appellant's counsel quote in support of their theory, viz.: " *   *   *   When there are circumstances tending to explain his apparent gross negligence, particularly when they are brought about by the negligence of the railroad company, the issue becomes one of fact for the jury.  *   *   *." *Bain v. Railway Company,* 120 S. C., 370, 113 S. E., 277, 279.

In the case of *Chisolm v. Railway Co.,* 121 S. C., 394, 114 S. E., 500, 504, Mr. Justice Marion used similar language to the above, but he went on for more than a page to recite the various acts which could and would divert the attention

of the traveler approaching the crossing, and he also said this: " * * * Here there was no attempt to cross the track ahead of a train known to be approachng, as in *Barber v. Railroad* [*Co.*], 34 S. C., [444], 451, 13 S. E., 630, *Drawdy v. Railroad Co.,* 78 S. C. [374], 380, 58 S. E., 980, and *Griskell v. Railway Co.,* 81 S. C., 193, 62 S. E., 205. In the *Cable Piano Company case* [*Cable Piano Co. v. Southern Ry.,* 94 S. C., 143, 77 S. E., 868], there was an entire absence of diverting influences attributable to conditions produced or controlled by the railway company, or of unusual conditions of any kind, which could in any wise have distracted the attention of the driver of the wagon from his duty to look before driving upon the crossing in plain view of the approaching train."

In the case of *Bain v. Northwestern Railroad Company, supra,* cited by appellant, it appears that the railroad was shifting cars at Summerton, at a point where the tracks of the railroad crossed Main and Cantey Streets, a short distance from the point where the streets cross each other. The method of shifting cars was to cut from the train the cars to be taken out—"kick" them with a blow from the engine with sufficient force to send them by the momentum thus acquired along the track. Parallel to the track upon which this movement was being performed was another track, which obscured the view of the operation. The cars with the engine, from which the cars had been "kicked," entered upon the side track. The plaintiff claimed to have been misled by the movement of the "wild cars" and was struck by the cars attached to the engine. Mr. Justice Cothran, for this Court, held that these facts made an issue for the jury. He also said: "Under ordinary circumstances the traveler approaching a crossing, who has full opportunity of seeing the approach of the train in time to avoid the collision, and who does not look, is, under the *Cable Piano case* [*Cable Piano Co. v. Southern Ry.*], 94 S. C., 143, 77 S. E., 868, guilty, not only of negligence, but of gross negligence, and as mat-

ter of law, when such facts appear the court may so declare. But when there are circumstances tending to explain his apparent gross negligence, particularly when they are brought about by the negligence of the railroad company, the issue becomes one of fact for the jury. * * * "

We are in full accord with this declaration of the law. And we concur with the Court in the conclusion that there were circumstances tending to explain the gross negligence, which were brought about by the negligence of the railroad company so that the issue became one for the jury. But we again call especial attention to the fact that in this case there are no such circumstances to explain the gross negligence of DeWitt Wannamaker in going on the crossing at Peaslee Street in full view of the approaching train.

In the *Cable Piano Company case, supra,* so often referred to, Mr. Justice Hydrick, delivering the opinion of this Court, said (94 S. C., 143, 77 S. E., 869) : " * * * Will Rucker, a negro youth about 20 years of age, was driving plaintiff's team, drawing a covered piano wagon along a highway which ran close to and parallel with the railroad for three-quarters of a mile or more, and then turned abruptly across the track; the distance from the turn in the highway to the crossing being from 20 to 30 feet. He testified that on account of the cover of the wagon he could not see the train which was approaching from his rear, without 'hanging out' of the wagon, and that he could not hear it because of the rumbling noise made by the wagon. At first, he testified that he looked but saw no train, but on cross-examination he admitted that, if he had looked, he would have seen it. * * * As there was nothing to indicate that the driver of the team was not in possession of his faculties, the engineer had a right to assume that he would exercise them, and not drive upon the track in front of the approaching train. According to the undisputed evidence, the track is straight and the view is unobstructed for at least three-quarters of a mile in both directions from the crossing. It

necessarily follows that, if the driver had looked before going upon the crossing, he would have seen the train in time to prevent the collision. The law imposes upon every capable person the duty of observing due care for his own safety when about to cross a railroad track which necessarily involves the exercise of his senses. And while it is ordinarily a question of fact for the jury to say whether, under the circumstances of the particular case, the traveler did exercise such care, when the facts are undisputed and susceptible of only one inference, it becomes a question of law for the court. * * * " Citing a number of decisions of the South Carolina Supreme Court in support; and it may be added that the *Cable Piano case* has been approved by a number of opinions.

Attention is called to the striking similarity of the facts of the *Cable Piano Company case* to those appearing in the present case. There is the following striking difference: In the former case, the driver of the wagon was a Negro youth, in the open country; in the present case the driver of the truck was a young white man just approaching his majority, who lived in the city and was familiar with the streets and the railroad crossings.

In the case of *Robison v. Atlantic Coast Line R. Co.,* 179 S. C., 493, 184 S. E., 96, 97, Mr. Justice Fishburne, who wrote the opinion of this Court, stated the facts as follows:

"On May 17, 1934, Herman Gregg, a negro boy about 17 years of age, met the plaintiff's intestate in the business section of the City [Florence] on Evans street. Herman Gregg was on his way to school, and the plaintiff's intestate was going from the white fish house where he worked, on Evans street, to the ice plant of the Florence Ice & Fuel company, located north of the railroad, and near the Dargan Street crossing. The plaintiff's intestate was riding a bicycle, and invited Herman Gregg to ride with him. Gregg then got upon the seat of the bicycle and began pedaling the same, while plaintiff's intestate was riding on the crossbar between

the seat and the handlebars. When they came to the intersection of Evans and Dargan streets, they turned North on Dargan street and rode down the same to Front street, and then attempted to cross the appellant's railroad tracks, where the plaintiff's intestate was killed by one of appellant's passenger trains going east and coming from Augusta through Florence.   *   *   *

"The testimony of Gregg tends to show that they reached the railroad crossing at about 8 o'clock a. m. Gregg was unable to estimate the speed at which the bicycle was going, but stated that they were not going very fast, because he had 'too much load to ride fast.' As Robison sat on the crossbar, he was constantly facing west, which is the direction from which the defendant's train was coming. Gregg testified that, as they approached the railroad crossing, 'I looked out next to the freight depot to see if any train was coming, and I looked next the passenger station, and I didn't see any. I didn't hear any bell ringing or whistle blowing, and I started on across. Before I got across the train was right up on me.'   *   *   *"

There was testimony for the plaintiff and testimony for the defendant. Mr. Justice Fishburne summarizes it all in this wise: "It is conclusively shown that Herman Gregg was thoroughly familiar not only with the situation at the railroad crossing, which he crossed every day on his way to school, but also that he knew the scheduled arrival of the railroad company's passenger train. Another significant feature of the testimony which must be kept in mind is this, that the deceased, from the position in which he was sitting on the crossbar of the bicycle, constantly faced west, which is the direction from which the passengar train was coming. The bicycle was going, according to one witness, at a speed not exceeding five miles per hour. It would certainly seem reasonable to conclude that, if Robison had exercised the slightest degree of care, he could have seen and heard the approaching passenger train in time to have jumped off the

bicycle. If Herman Gregg had exercised the slightest degree of care, at the speed at which he was going, he too had ample opportunity to either stop the bicycle or else turn the bicycle aside."

This able opinion states with approval the following rule:

"We think the correct rule is expressed in the following language taken from 52 C. J., 487: 'Where the evidence clearly shows that the injured person's opportunity for seeing or hearing the approaching train at the time of the accident was such that he could not fail to have seen or heard it in time to avert the accident if he had used due care in looking or listening, his contributory negligence in this respect should not be submitted to the jury, but is a question for the court, and it should direct a verdict for the defendant, grant a nonsuit, dismiss, or otherwise dispose of the case without the intervention of the jury, even though plaintiff and his witnesses testify that he stopped, looked and listened, but did not see or hear the train.'

"We add, however, that the testimony must be susceptible of no other reasonable inference."

In the case of *Hicks v. Atlantic Coast Line R. Co.*, 187 S. C., 301, 197 S. E., 819, 822, Circuit Judge Gaston, Acting Associate Justice, who delivered the opinion of this Court on appeal, said this:

"It is undisputed that the deceased, J. B. Hicks, was familiar with this location and crossing; and that there were no obstructions, or other things to obscure the view. It was daylight and the visibility was not camouflaged, concealed or diminished by anything whatsoever. The only reason under the testimony that he did not look and see the train was because he would have to turn clear around in order to do so. * * *

"It is undisputed that the train was in view for four hundred and fifty feet before it reached the crossing had the deceased turned around to see it. 'It necessarily follows that, if the deceased had looked, before going upon the crossing,

he would have seen the train in time to prevent the collision. The deceased did not observe the slightest care for his own safety, and the failure to observe such a slight precaution as to look in both directions for approaching trains before entering the crossing was gross negligence, and wilfulness. The evidence warrants no other inference than that his failure to look was a proximate contributing cause to the collision, if not the sole cause thereof.' " Citing the *Cable Piano Company case, supra.*

It seems wholly unnecessary to cite further authorities. We hold it to be the settled rule in this State that if there is no other reasonable inference to be deduced from the evidence than that the plaintiff failed to exercise the slightest care for his own safety, he was guilty of gross negligence and it was the duty of the Court to direct a verdict for the defendant. We are satisfied that the evidence in the present case, as applied to the above-stated rule, justified the Circuit Judge in directing the verdict for the defendant.

The exceptions are overruled and the judgment is affirmed.

Messrs. Justices Baker and Fishburne and Mr. Acting Associate Justice Wm. H. Grimball concur.

Mr. Chief Justice Stabler concurs in result.

Mr. Justice Carter did not participate on account of illness.