8342

WILSON v. SOUTHERN RY.

1. Carrier—Passenger.—Nonsuit improperly granted here (a) because the Court passed on the sufficiency of the evidence, (b) the evidence shows the servants of the carrier did not announce the passenger's station so that he could hear it, (c) the evidence shows the deceased was lying on the track in a drunken, helpless condition and in such condition the train should not have been run over him with impunity.
2. Amending Pleadings—Appeal.—In this case amending a complaint to conform to the facts proved would not have substantially changed the cause of action, and refusal of the motion is appealable.

Before Ernest Moore, Special Judge, York, November term, 1909. Reversed.

Action by C. Scott Wilson, administrator of Rainey Wilson, against Southern Railway Company and Ed S. Mott. Plaintiff appeals.

2—93

*Mr. Henry McClure,* for appellant, cites: *Refusal of motion to amend complaint to conform to facts is error of law:* 26 S. C. 417; 59 S. C. 87; 51 S. C. 418; 3 S. C. 401; 9 S. C. 330; 85 S. C. 454; 55 S. C. 90; 68 S. C. 409; 87 S. C. 240; 83 S. C. 559. *Carrier must discharge passenger at station:* 6 Cyc. 586, 587, 599; 67 S. C. 65; 41 S. C. 20; 78 S. C. 554. *Evidence does not tend only to show deceased was a trespasser:* 49 S. C. 18; 61 S. C. 558; 90 S. C. 335; 39 S. C. 162; 66 S. C. 44; 61 S. C. 561; 67 S. C. 510; 72 S. C. 393; 82 S. C. 327; 75 S. C. 293; 90 S. C. 265; 68 S. C. 488.

*Messrs. McDonald & McDonald,* contra, cite: *When passenger ceases to be such after leaving train:* 6 Cyc. 542; 4 Elliott 1592; 3 Thomp. on Neg. 130; 112 Am. St. R. 255; 10 Am. & Eng. R. R. Cas. (N. S.) 557; 9 Am. St. R. 676. *Death of deceased was caused by an independent intervening cause:* 32 Pac. R. 809; 37 S. W. 992; 17 N. E. 107; 36 At. 558; 19 S. E. 813; 21 Mo. App. 188; 117 Penn. St. 390. *Allowing amendments:* 30 S. C. 564; 49 S. C. 513; 49 S. C. 516; 19 S. C. 560; 51 S. C. 421; 79 S. C. 270; 70 S. C. 344.

October 14, 1912.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.    This is an action for damages, alleged to have been sustained, on account of the wrongful acts of the defendants, in causing the death of plaintiff's intestate.

The allegations of the complaint, material to the questions involved, are as follows:

(1) "That heretofore, to wit: On the 31st day of October, 1906, one D. Rainey Wilson embarked as a passenger on a train of the defendant, Southern Railway Company, on said line of railway, of which train the defendant, Ed S. Mott, was conductor and in charge, for passage from Columbia to Smith's Turnout, and paid his fare to that point, and notified the defendant, Southern Railway Com-

pany, its officers and agents, of his wish to leave said train at that point, but was carried past said station to Ogden, near which station said D. Rainey Wilson, at the invitation of the agents of the defendant, Southern Railway Company, alighted from said train, and was seen afterwards, while still on the premises of the defendant, Southern Railway Company, as a passenger, and while leaving the same for his home, and proceeding to make use of the nearest highway crossing for that purpose, was struck by another train of said Southern Railway Company operated in a wantonly, reckless and negligent manner, was thereby horribly mangled and killed almost instantly, to the damage of the plaintiff and those for whom he sues, twenty thousand dollars.

(2) "That the death of the said D. Rainey Wilson, as aforesaid, was caused by the wilful, wanton and negligent conduct, omissions and derelictions of the defendant, Southern Railway Company, its servants and agents, as proximate causes thereof, (a) in failing to notify the said D. Rainey Wilson, of the approach to and arrival at his destination of said train, on which he was a passenger; (b) in stopping the said train at Ogdon in a dangerous and unusual place, and there inviting the said D. Rainey Wilson to alight; (c) in operating the train that struck the said D. Rainey Wilson in a wilful, wanton, reckless and negligent manner, in failing to give the signals required by law at highway crossings; (d) in failing to give the said D. Rainey Wilson, a reasonable opportunity to alight at his destination, and by the joint and concurrent wilfulness, wantonness and negligence of the defendants, in failing to notify the said D. Rainey Wilson, of the arrival of the train on which he was riding, at his destination, and in stopping said train at a dangerous and unusual place at Ogden, and inviting said D. Rainey Wilson there to alight, as proximate causes of said death."

The defendants served separate answers to the complaint, and merely interposed a general denial of its allegations.

At the close of the plaintiff's testimony, the defendants made a motion for a nonsuit, on the ground that the undisputed evidence showed, that the plaintiff's intestate was a trespasser, and that there was no testimony, tending to show the breach of any duty, which the defendant owed him as such.

In granting the motion for a nonsuit, his Honor, the presiding Judge, assigned the following reasons : "I will have to grant the motion for a nonsuit. I don't think there is any evidence of such wilfulness, wantonness, or recklessness, as would make them responsible, to a man who was a trespasser, on the track, and I think the evidence tends to show, *and only tends to show,* that at the time he was struck, the deceased had ceased to be a passenger." (Italics ours.)

· The appellant's first and second exceptions, assign error on the part of his Honor, the presiding Judge, in holding :

"That the deceased was a trespasser on the track of the defendant, when the questions should have been left to the jury, there being some evidence tending to show, that said deceased was a passenger, or at least a licensee.

"That the evidence tends to show, and only tends to show, that the deceased had ceased to be a passenger, although it appeared by the evidence that he had been wrongfully carried past his destination, and discharged at the wrong station, and while in the act of returning to his proper destination, was struck without warning, or even being seen by those operating the passenger train; the status of the deceased at the time of the injury, thus being a question of fact for the jury."

There was testimony to the effect, that the plaintiff's intestate purchased a ticket to Smith Turnout, but that the defendant failed to give him notice of the station, when the train arrived at that point, and he was carried to Ogden, the next station, which was about three miles from Smith's Turnout; that the train ran into a sidetrack at Ogden where it remained about thirty minutes, waiting for the train to

pass, which was going in an opposite direction; that plaintiff's intestate was drinking heavily, after leaving Columbia, where he had gone that morning, to attend the agricultural fair; that when the expected train arrived, it failed to give the required signals in approaching the station; that plaintiff's intestate left the train, upon which he was a passenger, before the expected train arrived, and was not seen alive thereafter, but one of his legs was discovered about 300 or 400 yards from the station, on the railroad track, in the direction of Smith's Turnout, the main part of his body was also found upon the railroad track, about 50 yards nearer Smith's Turnout, and other parts of his body were scattered along the railroad track, for several hundred yards nearer Smith's Turnout; that there is a path near where the leg was found, leading from the dirt road to the railroad track, and which has been used for years, by those approaching and leaving the station. The following testimony of Wm. C. Pearson, a witness for the plaintiff, is explanatory of this locality:

"Do you know where that path comes up from that neighborhood road to the depot? Yes, sir. How long has that been used, Mr. Pearson? O, ever since I can mind. What did you say? I guess about ten or fifteen years. That is as far as I can mind about it. The public used it going to the station? Pretty generally; yes, sir. Do you recollect whether a leg was found north of where that goes out to the road, or not? Found south of the path, where it goes up the railroad. How far south of the path? I reckon something like ten or fifteen feet or yards, or something like that; right close to it. Ten or fifteen feet south of the path? Yes, sir. A person in getting off at Smith's Turnout— I mean at Ogden—which way would he go in getting to Smith's? They would go back down the railroad, if they were wanting to go. That would be the straightest way. Have you any public road, leading directly from there to Smith's? There is some roads go down the railroad. There

is no public road, unless you get in the old Saluda road. That is a public road.  That is considerably out of the way? Yes, sir; about a mile."

Plaintiff's attorneys then propounded this question to the witness: "People making time from Ogden to Smith, which way do they generally go?"

Upon the objection of the respondent's attorneys, the Court ruled that the testimony, which the plaintiff's attorney sought to introduce, was inadmissible.

The motion for a nonsuit was granted upon a misinterpretation of the law.  His Honor, the presiding Judge, did not grant the motion, on the ground that the undisputed testimony showed, that the plaintiff's intestate had ceased to be a passenger, but emphasized the fact, that it only *tended* to show, that such relation no longer existed between him and the railroad company.  In other words, he passed upon the sufficiency of the testimony, which can be determined only, by the jury.

There is another reason why the nonsuit was improperly granted.  There was testimony tending to show, that the defendant failed, to announce the station at Smith's Turnout within the hearing of plaintiff's intestate, or those in the car with him.  The complaint alleges negligence in this respect.  The rule is thus stated in 5 Enc. of Law 565: "It is a well settled principle of law, that a railroad company carrying passengers, in order to afford them opportunity to leave the train, at their places of destination, is bound to have the name of the different stations announced, upon the arrival of the train, and then to stop the train, for a sufficient length of time, for passengers to get off with safety, and that a railroad company, is liable for any loss or injury, which may result to a passenger, by reason of a violation of this duty."

There is yet another reason why there was error in granting the motion for a nonsuit.  After discussing the mangled condition of the dead body, the respondent's attorney thus

explains the manner, in which the accident occurred: "These physical facts appear to be conclusive, as to his position on the track, when he was struck by the train, as it is almost impossible, to imagine any other position, in which his body could have been, that would have produced the injuries testified by these witnesses, except that he was lying down on the track, at the time he was struck." Let us even assume that he was a trespasser, and was killed while lying on the railroad track, in a drunken and helpless condition, it does not, however, necessarily follow, that the defendant could run over him with impunity. The testimony tended to show, that it was a bright night; that the track was straight for about 700 yards from the place where the leg was found, towards the north, and was straight for more than two miles in the direction of Smith's. The rule in such cases, is thus stated in a note to *Central R. R.* v. *Vaughn,* 30 Am. Rep. at page 54, by Mr. Freeman, and quoted with approval in *Smalley* v. *Ry.,* 57 S. C. 243, 35 S. E. 489, and *Haltiwanger* v. *Ry.,* 64 S. C. 7, 41 S. E. 810: "The true principle it is conceived, is, that the engineer should see that the track is clear; but that when an obstruction is perceived, the proper course to adopt, will depend upon whether it is a living or inanimate object, whether it is an intelligent human being, under ordinary circumstances, of discerning the means of securing safety, or a brute which has no guide but mere instinct. If the object seen is an intelligent human being, it seems to be generally agreed, that the engineer has the right to presume, that he will get out of harm's way, before the engine reaches him, and that it is not negligence to act upon that presumption." In the case of *Sentell* v. *Ry.,* 70 S. C. 183, 49 S. E. 215, the Court uses this language, in regard to a trespasser: "It makes no difference if the trend of the testimony was, that Sentell was a naked trespasser, the defendant owed him a duty, viz., that he should not be treated by the defendant, without some regard to the dictates of humanity. There was positive testimony that the

engineer could have seen Mr. Sentell in plenty of time, to have stopped the train, before reaching him and thus have saved his life. All in all, there was plenty of testimony to show negligence. Therefore, the special Judge should have refused the motion for nonsuit."

The last question is, whether there was error on the part of the Circuit Judge, in refusing the plaintiff's motion to amend the complaint, so as to conform to the facts proven. The reason assigned by him was, that the amendment would substantially change the cause of action.

Ordinary motions to amend, are addressed to the discretion of the presiding Judge, and his rulings are not subject of appeal; but if his ruling is based upon an erroneous principle of law, there may be an appeal. In the present case, an order conforming the complaint to the facts proved, would not have changed, substantially, the plaintiff's cause of action. The exceptions raising this question are, therefore, sustained.

It is the judgment of this Court, that the order of nonsuit be set aside, and the case remanded for a new trial.

MESSRS. JUSTICES HYDRICK AND WATTS *concur in the result.*

MR. JUSTICE WOODS, *concurring in the result:* There is no evidence whatever that the defendant's agent did not call out, in the coach where Wilson was, the station, Smith's Turnout, which was his destination; on the contrary, the plaintiff introduced evidence of other passengers who heard the station called in other coaches. Wilson was not a passenger when he was killed, for the train had stopped at Ogden between twenty and forty-five minutes before, and he had left the car and proceeded, on his way towards home, several hundred yards up the track. Even if Wilson's station was not called, that negligence was not the proximate cause of his standing or lying on the track and being run

over at the next station.  One or two of plaintiff's witnesses stated that they did not hear the train which probably ran over Wilson give the signal for Ogden station, but another testified positively that the signal was blown, and the engine was running with a brilliant electric headlight.  The signal, the light, and the noise of the train were sufficient to warn even a licensee to get off the track if in his senses; and if the defendant was merely negligent, it was contributory negligence in the deceased not to get off the track on the approach of the train, or to lie on the track in such a condition that he would be heedless of its approach.

But contributory negligence is not a defense against wilfulness or wantonness.  The duty of a locomotive engineer and a fireman to keep a vigilant lookout ahead, for the sake of passengers as well as those who may be helpless on the track, is urgent, and the failure to keep a lookout may be evidence of recklessness or wantonness.  In this case, the night of the fatality was bright and the locomotive had a powerful electric headlight.  There was evidence from which it might be inferred that Wilson was lying on the track asleep or drunk or that he was crossing the track on his way home, and that the place was one where persons were to be expected crossing the track.  The evidence also tended to show that those in charge of the engine did not see Wilson at all, for the train did not slow up or stop.  From all this the jury might infer that no lookout was kept and that this was a reckless disregard of the lives of those who might be on the track even as trespassers. *Sentell* v. *So. Ry.,* 70 S. C. 183.  The evidence warrants, also, a rejection of such an inference, but whether the inference should be accepted or rejected was a question for the jury.

MR. JUSTICE FRASER *concurs.*