15039

SMITH v. SOUTHERN RY.—CAROLINA DIVISION ET AL.

(7 S. E. (2d), 630)

March, 1939.

*Messrs. George Bell Timmerman, George Bell Timmer-man, Jr.,* and *Callison & Smith,* for appellant,

*Messrs. Frank G. Thompkins* and *Steve C. Griffith,* for respondents,

March 14, 1940.

The opinion of the Court was delivered by MR. E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

Rufus Smith was killed by a regular passenger train of the Southern Railway near the station of Perry, and this action is brought by the plaintiff and administratrix of his estate. The testimony shows that Rufus Smith was riding in the back of a truck coming from Salley to Perry and that on the front seat were three men, the driver of the truck being one Clarence Poole. Rufus Smith was sitting on the back of the truck while Clarence Poole and the other two were sitting in the seat of the cab of the truck. The railroad and the road travelled by the truck are parallel to each other and near each other nearly all of the way. Just before reaching Perry, and within about two hundred yards of where Rufus Smith lived there is a crossing, and at this place the collision occurred. The testimony shows that Rufus Smith and the others riding in the truck were very familiar with this crossing. Clarence Poole had been using this crossing constantly for some time hauling cotton to a gin and the object of his crossing the railroad at the time of the accident was to get a bale of cotton from the gin. The truck was hit by a regular passenger train running on schedule time.

Mr. Smith did not go to Salley with the other three, but they were giving him a ride from Salley to his home near this crossing. The testimony is clear that Smith was very much under the influence of whiskey when he left Salley, and that at least one of the three men in the cab of the truck was also under the influence of intoxicants. The distance from Salley to Perry is about four miles. The truck and the train were going in the same direction. The truck made a

turn about sixty feet from the railroad and crossed the railroad at right angles. There was a side track which the truck crossed before it reached the main line, and the testimony is that if any of the occupants of the truck had looked in the direction from which the train was coming when the truck was on the side track he could have seen the train for about a half-mile. There is no testimony that the driver or anyone else looked to see if the train was approaching. One of plaintiff's witnesses testified that if the driver had looked when the truck was on the side track he could have seen the train for a half-mile. The driver and the other occupants of the truck were not only familiar with the crossing, but were also familiar with the schedule of the train with which they collided. The main part of the truck had crossed and the train collided with the rear end of the truck, killing Mr Smith. The evidence shows that Mr. Smith could have looked out of the rear of the truck and seen the train approaching for some considerable distance and that he could have looked through cracks two inches wide on the side of the truck body and seen the train after they turned to cross the railroad, if he had looked. The driver of the truck did not testify, but one of the other occupants of the seat in cab testified that about the time the truck turned from the highway to cross the railroad Mr. Smith got up and knocked on the back of the cab and asked to be put out at his home which was very near, but they told him that they were going to the gin, which was on the other side of the railroad, for a bale of cotton before taking him home. This witness testified that after this conversation with Smith, just about time enough for him to straighten himself on the seat of the cab, the collision occurred. This indicates that Smith did not look or listen for the train at any time after leaving the highway for the purpose of crossing the railroad track. The two witnesses who were riding in the cab with the driver both testified that on account of the construction of the truck and the sides it made so much noise that they could not have heard any signals unless the train had been very close upon

them. At the conclusion of all the testimony the presiding Judge directed a verdict in favor of the defendant, and in doing so, made the following comments:

"I have endeavored to follow the testimony carefully and have listened to the very forceful argument of counsel, but, as I see it, the only reasonable inference to be drawn from the testimony is that the driver of the truck did not exercise the slightest degree of care, and is chargeable with gross negligence. He has not testified himself, but the testimony of Lonnie Poole and Gonzales Poole, who sat on the front seat with him, shows that he, and they, took no precautions whatsoever in approaching the crossing. All of them were familiar with the crossing and the train was running on schedule time. Now the testimony of Gonzales Poole is explicit to the effect that the side track, before entering upon the main line upon which the train was running, the train would have been visible for about a half mile, a remarkably accurate estimate, for the measurements show that it was about the distance from the crossing to the crest of the grade. My notes of the evidence show that Gonzales Poole said, 'Yes, sir, if he had been looking, he could have seen it a half mile.' Hence, the driver would have seen the train for approximately a half mile before entering on the main line if he had looked, but he failed to do so.

"It is an undisputed fact that Mr. Smith was a guest passenger and the negligence of the driver could not ordinarily be imputed to him, but the rule is different under the crossing statute. The facts in the case of *Funderburk v. Powell,* 181 S. C., 412 [187 S. E., 742], to which Mr. Timmerman has referred, are far different from the facts here; especially since it will be observed that the *Funderburk case* does not, in anywise, involve the crossing statute. Referring to that statute, Section 8377, Code of 1932, I read from it the following language: 'Unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time

of the collision guilty of gross or wilful negligence.' So, by the express terms of the section, if a person having charge of another person is guilty of gross contributory negligence there would be no liability.

"It is true, as Mr. Timmerman states, that there have not been many decisions by our Supreme Court on this particular subject, but as I read the case of *Neely v. Carolina & N. W. Railway Company*, in 123 S. C., 449 [117 S. E., 55, 57], it seems clearly to hold, as I have indicated, that the gross negligence or wilful negligence of the driver of an automobile may be imputed to the occupant of the vehicle who is injured at a crossing. The Court uses this language here: 'We have just seen that the statute gave immunity in crossing cases, where 'the person having charge of his person or property was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law'."

"Of course, there is ample testimony in this case, for the jury, that the statutory signals were not given, although there is also evidence to the contrary. But, in my opinion, the evidence conclusively shows gross negligence on the part of the driver, which contributed to the injury which resulted in Mr. Smith's death. There is considerable testimony in regard to the embankment, but I do not find anything therein to show that the embankment constituted actionable negligence or that it was a proximate cause of the injury. And the same may be said with reference to any testimony regarding the speed of the train. As I have stated, it is my conclusion that the only reasonable inference that can be drawn from the evidence is that the driver of the truck was guilty of gross negligence; that is to say, he failed to exercise the slightest degree of care, and since Mr. Smith was in his charge, a verdict in favor of the plaintiff would not be permissible under the evidence * * *."

While there is evidence that no crossing signals were given and, for the purposes of this case, admitting that no

signals were given, it does not seem that such failure to give the signals could have contributed in any way to the collision, as both of the witnesses riding in the cab stated that the truck made so much noise that they could not have heard the signals until the train was close upon them. The occupants of the truck, knowing the very great difficulty of hearing the crossing signals should have been more careful to look for the train which none of them did.

No useful purpose can be served by a review of the law applicable to this case. These principles of law are clearly set forth in the case of *Neely v. Carolina & N. W. Railway Company,* 123 S. C., 449, 117 S. E., 55, and *Robison v. Atlantic Coast Line R. Co.,* 179 S. C., 493, 184 S. E., 96, where Justice Fishburne made an exhaustive statement of this law. In *Carter v. Atlantic Coast Line R. Co.,* S. C., 7l S. E. (2d), 163, another most exhaustive statement of the law is made. This last opinion so clearly reviews and applies the law applicable to this case that the writer of this opinion does not think it necessary or profitable to do more than cite these cases to show that the presiding Judge reached a correct conclusion. "That the only reasonable inference that can be drawn from the evidence is that the driver of the truck was guilty of gross negligence, that is to say, he failed to exercise the slightest degree of care, and since Mr. Smith was in his charge, a verdict in favor of the plaintiff would not be permissible under the evidence."

The appellant charges error in that this action stated both a common-law action and a crossing action; however, in reading over the testimony as shown by the record it appears clearly that the case was tried under the crossing statute. The judgment is affirmed.

MR. CHIEF JUSTICE BONHAM and MR. JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE BAKER did not participate.