15103

CARTER v. ATLANTIC COAST LINE R. CO. *ET AL.*

(10 S. E. (2d), 17)

*Messrs. Willcox, Hardee & Wallace* and *Woods & Woods* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

June 17, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This appeal brings up for review an accident which occurred on December 15, 1937, at a railroad crossing in Timmonsville, South Carolina, in which plaintiff's decedent, David H. Carter, was killed. The specifications of negligence, willfulness, wantonness and recklessness which were submitted to the jury charge: (a) Operation of train at a high, dangerous and excessive rate of speed; (b) failure to give the statutory crossing signals; (c) failure to keep a proper lookout; (d) failure to stop the train after the defendant Barrett had observed or should have observed plaintiff's intestate on the railroad track; (e) running the train with such reckless inattention as to fail to see the plaintiff's intestate on the track; and (f) maintaining a freight station and box cars in such close proximity to the crossing as to obstruct the view of plaintiff's intestate.

The plaintiff based his right to recover upon the alleged joint and concurrent negligence, willfulness, wantonness and recklessness of the defendant Atlantic Coast Line Railroad Company, and its engineer, W. R. Barrett, in the specific particulars above set forth. Actual and punitive damages were claimed. The defendants denied the material allegations of the complaint, and pleaded contributory negligence and gross contributory negligence and recklessness of plaintiff's intestate.

At the conclusion of the testimony offered by the plaintiff and the defendants the latter moved, both separately and jointly for a directed verdict generally, and such motions were overruled. The trial resulted in a verdict and judgment for the plaintiff against the railroad company alone,

for actual damages. The company has appealed upon several exceptions. The first question has to do with whether the Court erred in refusing to direct a verdict for appellant.

The accident occurred at the intersection made by the railroad track and Brockington Street in the town of Timmonsville. The railway runs substantially north and south through the town on grade in a stright line, and divides Main Street, which parallels the railroad right-of-way on each side. Brockington Street runs east and west, is 36 feet wide and is a much used paved highway. The condtions prevailing at this crossing are fully shown by a survey and map introduced by the defendants.

The appellant's freight train, consisting of the engine, thirty-four freight cars, and a caboose, which passed through Timmonsville each day between 2:30 and 3 o'clock in the afternoon, was going south, and running approximately ten minutes behind schedule at the time of the accident. David H. Carter, the deceased, was driving alone from west to east toward the crossing on Brockington Street, in his 1931 Chevrolet coach. Brockington Street is the first street crossing made by a train approaching Timmonsville from the north.

Appellant maintains a freight depot on the west side of the railroad track, 223 feet north of Brockington Street, and connected with it on its northern side is a covered platform. Immediately in front of the freight depot, and between it and the main line, there is a sidetrack used in unloading freight from cars into the freight station. According to testimony introduced by the plaintiff, a string of four box cars occupied this sidetrack, and projected six or eight feet beyond the southern edge of the freight depot toward the crossing. Therefore, the track between the Brockington Street crossing and the freight depot and the box cars to the north, from which direction the freight train approached, was clear and unobstructed for at least 214 to 215 feet. There was also an open space between the box cars and the main line of approximately seven feet.

The decedent, who was 67 years of age, was a normal man, and suffered from no mental or physical disability, according to the plaintiff's evidence; had resided in the town of Timmonsville for 21 years preceding his death, within one or two blocks of the railroad crossing in question; was thoroughly familiar with the crossing, and passed over it daily—sometimes four or five times in a day. There was a lumber yard immediately to the rear of the freight depot, and separated from it by Main Street. Decedent spent a portion of his time practically every day sitting around the lumber yard and talking with his friend, Mr. Dixon, who operated it. On the day of the accident, about 2:30 o'clock p. m., he was at the lumber yard, and just before the arrival of appellant's freight train, he drove his car diagonally, at an angle of about 45 degrees, across the open area between the freight depot and the crossing to the Brockington Street crossing. He was driving slowly, at a speed of from 10 to 12 miles an hour, with his car under control. So far as the positive evidence shows, he neither looked nor listened, nor slackened his speed until he reached a spot within 10 feet of the first rail of the track. But the inescapable inference is that if he had looked behind him while pursuing this diagonal course toward the crossing, his view of the track to the north would have been cut off by the freight depot and box cars until he was within a few feet of the track. It is clear from all of the evidence that he stopped the car when the front wheels were approximately on the first rail, and then made an effort to turn the car around to the right. A reasonable inference from the evidence is that the deceased discovered the presence of the oncoming train as it emerged from behind the box cars to his left (about 215 feet away), while he was about 10 feet from the crossing. Realizing his imminent peril, he attempted to turn back, and almost succeeded in escaping the collison. The pilot beam of the engine struck the left rear end of the automobile when the latter in its turning movement still lacked 12 or 18 inches of clearing the danger zone.

There was testimony that appellant's freight train did not give the statutory crossing signals, and that the train was running at a speed which varied, according to the testimony of several witnesses, from 30 to 60 miles per hour. Evidence for the defense tended to show that the speed of the train at the crossing was 35 miles per hour. On these issues the evidence was in sharp conflict. There is no dispute that the deceased had an open view of the track to his left for a distance of at least 214 feet, but beyond that point the freight depot and box cars formed a barrier. Of course as he gradually approached the crossing the more extended became his angle of vision down the track in the direction from which the train was approaching. But a defense witness who made the survey and map of the locale testified that a traveler situated as was the plaintiff could not see any distance down the track beyond the box cars until he was within seven feet of the crossing. So that looking would have been only partially effective until that point was reached. He further said that before an automobile traveler could see any appreciable distance down the track from the crossing, the front wheels of his car would have to be within three or four feet of the crossing. And he added that a train running 40 miles per hour past the freight depot and box cars would get to the crossing in somewhat less than four seconds. Other witnesses testified to the same effect.

In order to bar a recovery under the facts and circumstances as stated, the appellant must sustain its affirmative defense that the conduct of the decedent amounted to gross and willful negligence which contributed to the fatal injury as a proximate cause.

The pertinent rules applicable to crossing cases are set out in *Ford v. Atlantic Coast Line R. Co.,* 169 S. C., 41, 168 S. E., 143; *Chisolm v. Seaboard Air Line Ry. Co.,* 121 S. C., 394, 114 S. E., 500; *Bushardt v. United Investment Co.,* 121 S. C., 324, 113 S. E., 637, 35 A. L. R., 637. They have been repeated and reaffirmed in a number of later decisions:

*Robison v. Atlantic Coast Line R. Co.,* 179 S. C., 493, 184 S. E., 96; *Hicks v. Atlantic Coast Line R. Co.,* 187 S. C., 301, 197 S. E., 819; *Wannamaker v. Southern R. Co.,* 191 S. C., 86, 3 S. E. (2d), 811; *Howell v. Southern R. Co.,* 192 S. C., 152, 5 S. E. (2d), 860; *Moore v. Atlantic Coast Line R. Co.,* 192 S. C., 406; 7 S. E. (2d), 4; *Smith v. Southern R. Co. (Carolina Division),* 193 S. C., 44, 7 S. E. (2d), 630; *Carter v. Atlantic Coast Line R. Co.,* 192 S. C., 441, 7 S. E. (2d), 163.

A rule firmly established by the foregoing cases is that a traveler on reaching a railroad crossing and before attempting to go upon the track, must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains; if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control, he must look and listen at a place and in a manner that will make the use of his senses effective. Another principle which the cases sustain is that the duty of a traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances. See *Chisolm v. Seaboard Ry. Co., supra.*

The view taken in this State is that it is ordinarily a question for the jury, in the application of the standard of due care, to say whether the attempt of a traveler to cross without looking and listening effectively was excusable or culpable; that is, whether or not it amounted to negligence or willful misconduct. Nevertheless, the circumstances may be such that the existence of negligence or gross contributory negligence becomes a matter for the determinaton of the Court and not for the jury, as where the existence of contributory negligence is the only conclusion deducible by reasonable minds. *Chisolm v. Seaboard Air Line Ry. Co., supra.*

Where the view or the hearing of a traveler approaching a railroad crossing is obstructed, he is under the duty of using greater care and prudence in looking and listening for approaching trains than where there is no obstruction. The degree of care which he must exercise in such cases, particularly where he is familiar with the crossing, must be in proportion to the increase of danger, and must be such care and prudence in looking and listening as an ordinarily prudent man would exercise under like circumstances of obstructions to view or hearing—the question of the·exercise of proper care and prudence in looking and listening depending upon the circumstances at the time and crossing. *Robison v. Atlantic Coast Line R. Co., supra,* and also 52 C. J., Section 1880, page 304.

Of course, as was suggested in *Carter v. Atlantic Coast Line R. Co., supra,* when one has looked for an approaching train, it must not necessarily follow as a matter of law that he is remediless because he did not look at the precise time and place when and where looking would have been to the most advantage.

There is no doubt or uncertainty concerning the rules of law applicable to crossing accident cases. The difficulty arises in applying the rules to the various factual situations. In the case at bar the duty was upon the decedent to look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company. And the further duty was upon him to look and listen at a place and in a manner that would make the use of his senses effective to the extent the matter was under his control.

Mr. Barrett, the engineer and co-defendant of appellant, testified, as did the fireman, that he first saw the decedent when the latter was within ten feet of the crossing, at which time the train was approximately 300 feet away, toward the northern end of the freight depot, and he says that it was at this point that he applied his emergency brakes. It is easily

inferable that the trainmen had no better view of plaintiff's intestate when abreast of the freight depot and the box cars than the decedent had of the approaching train, by reason of the same obstructions. It is likewise a reasonable inference that the decedent saw the train approximately at the same instant that the trainmen saw him.

In our judgment it was clearly a question for the jury to determine whether the plaintiff's intestate was negligent or grossly negligent under the facts and circumstances narrated. From the evidence, the jury could reasonably have drawn the conclusion that in the exercise of due care, the decedent did look and listen at substantially the precise time and place when and where looking and listening was to the most advantage in view of the obstructions created by the freight depot and the box cars.

Conceding that there was a willful failure on the part of the defendants to give the statutory signals on the approach of the train to the crossing, should it be held as a matter of law that the sole, proximate cause of the fatal injury was the intestate's own conscious or reckless disregard of his duty under the circumstances surrounding him as would charge him with gross contributory negligence? We think that it is apparent that the evidence is not susceptible of that inference as the only reasonable conclusion.

It was held in *Ford v. Atlantic Coast Line R. Co., supra* (169 S. C., 41, 168 S. E., 156, that if the facts "in controversy and the inferences properly deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question becomes issuable and must be submitted to the jury under appropriate instructions."

And it was said in *Carter v. Atlantic Coast Line R. Co., supra* (192 S. C., 441, 7 S. E. (2d), 168), quoting from 52 C. J., 496, 497: "It is ordinarily a question for the ury

whether under the particular circumstances one who was injured at a railroad crossing at which his view or hearing was obstructed exercised due care in looking and listening, or in stopping, looking and listening, for approaching trains, cars or engines at a proper time and place and in the right direction. * * * "

In the case at bar, there was no attempt to cross the track ahead of a train known to be approaching, as in *Robison v. Atlantic Coast Line R. Co., supra; Barber v. Richmond & D. R. Co.,* 34 S. C., 444, 13 S. E., 630; *Drawdy v. Atlantic Coast Line R. Co.,* 78 S. C., 374, 58 S. E., 980 and *Griskell v. Southern R. Co.,* 81 S. C., 193, 62 S. E., 205.

The appellant raises the serious issue that there was no legal basis for a verdict against the railroad company alone, after a verdict in favor of the defendant W. R. Barrett. As previously adverted to, the jury returned a verdict against the railroad company and exculpated W. R. Barrett, the locomotive engineer, of any negligence, willfulness, wantonness or recklessness. And appellant argues that this necessarily acquitted the railroad company of any negligence or willfulness upon the engineer's conduct, upon the principle that where principal and agent or master and servant are sued together for the same joint and concurrent act of negligence or willful tort and the principal's or master's liability rests solely upon such agent's or servant's conduct, a verdict against the master alone is illogical and cannot stand. The rationale of the doctrine is that if the agent or servant is without blame in his conduct, the principal or master cannot be held blamable because of that same conduct. *Chapman-Storm Lbr. Co. v. Minn.-S. C. Land & Timber Co.,* 183 S. C., 31, 190 S. E., 117.

Applying this principle, it is urged that the verdict in favor of the engineer necessarily exonerated the railroad company on specifications charging: Operation of the train at an excessive rate of speed; failure to give the statutory signals; failure to keep a proper look-out; failure to stop the

train after the engineer had observed or should have observed the car of plaintiff's intestate on the track, and running the engine with such reckless inattention as to fail to see plaintiff's intestate on the track. The only specification of negligence, it is said, which could be construed as applying solely to the railroad company was the maintenance of the freight station and box cars in such close proximity to the crossing as to obstruct the view of plaintiff's intestate.

After the return of the verdict, appellant moved for judgment in its favor *non obstante veredicto,* and then made an alternative motion for a new trial in the event of refusal of the motion of udgment. Both motions were refused.

In our opinion, the judgment for appellant *non obstante veredicto* should have been granted.

The respondent does not predicate negligence upon the position of the freight station and the box cars alone, but upon the running of the train at an excessive rate of speed, without giving the statutory signals, and the other acts of omission and commission hereinabove mentioned. If, as found by the jury, the engineer was absolved from all joint acts of negligence and willfulness as charged in the aforementioned specifications of negligence, then the verdict against the railroad company could have rested only upon the charge of negligence because of the position of the freight station and box cars. And it would seem clear that the mere location of the depot and the box cars could constitute negligence only when taken in conjunction with the operation of the train; and if the train was operated without negligence or willfulness, it is difficult to see how the verdict against the railroad company can stand.

Where the only negligence or willfulness charged against the master is an act of negligence or willfulness of an agent or servant, and where the verdict exonerates the agent from the charge of negligence or willfulness, the effect is also to relieve the master. *Rhodes v. Southern Ry. Co.,* 139 S. C., 139, 137 S. E., 434; *Sparks v.*

*Atlantic Coast Line R. Co.,* 104 S. C., 266, 88 S. E., 739; *Jones v. Southern R. Co.,* 106 S. C., 20, 90 S. E., 183; *Collins-Plass Thayer Co. v. Hewlett,* 109 S. C., 245, 95 S. E., 510, and *Durst v. Southern R. Co.,* 130 S. C., 165, 125 S. E., 651, 652.

In the case at bar, except for the charge relating to ■ the freight depot and the box cars, the railroad company's liability and that of Barrett were predicated solely upon joint and concurrent acts of negligence. An examination of the complaint discloses that it contains no general allegations of negligence against the railroad company. But the plaintiff has relied upon the specific acts of the engineer and the imputed liability of the company on account thereof.

It was said in *Durst v. Southern Ry. Co., supra,* that: "In the absence of a general allegation of negligence on the part of the master, no valid reason appears for departing from the salutary rule, that the plaintiff must rely upon the specification made." And it was further said: "Where the allegations as to the defendant's negligence are specific, the proof also must be specific and must conform to the facts alleged."

Respondent now seeks to sustain the verdict upon ■ the ground that the evidence tends to show that the failure to give the statutory signals might have been the fault of the fireman, another servant of the railroad company. But this is nowhere alleged in the complaint; nor if it were alleged is it supported by the evidence, in our opinion.

It is further contended that the excessive speed of the train had to be maintained at a certain schedule, by express directions of the railroad company. This is not alleged in the complaint, but even if there had been such allegation we have been unable to find evidence which would sustain it.

In view of the conclusions reached, it is not deemed necessary to pass upon other exceptions.

Judgment reversed, and case remanded for entry of judgment in favor of appellant.

Mr. Chief Justice Bonham and Mr. Justice Baker concur.

Mr. Acting Associate Justice Wm. H. Grimball concurs in result.

Mr. Justice Stukes did not participate.