### 16330

PADGETT v. SOUTHERN RY. CO. *ET AL.*

(58 S. E. (2d) 895)

*Messrs. Moss and Moss,* of Orangeburg, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellant,*

*Messrs. Hydrick & Hydrick,* of Orangeburg, *for Respondent,*

March 15, 1950.

STUKES, Justice.

Respondent recovered verdict and judgment against appellant for $2,500.00 actual damages for the alleged wrongful death of her intestate who was her seventeen-year-old son. He was one of twin brothers who were riding with another youth in the latter's Chevrolet coupe of 1930 vintage which was struck by appellant's railroad train and demolished at a grade crossing in Orangeburg County. All were instantly killed and one or more of the bodies horribly mangled. Wreckage of the automobile was carried under the railroad engine for a distance of half or three-quarters of a mile. The accident happened in the late afternoon of Sept. 4, 1948, when light rain fell. No eyewitness testified.

The earth road traveled by the decedents left a paved highway and ran through a field to and across the railroad track, through the yard of a colored tenant farmer and thence to an Edisto River landing. Beyond the dwelling, and to the river, it was apparently used only by fishermen. Returning from the river swamp the automobile was stopped at the Negro's house and the driver talked to his young daughter, inquiring the whereabouts of her father who was away. It was raining and after the conversation she returned to the house as the car left, bound for the nearby railroad crossing. She testified to these facts but she did not hear the train or collision although the crossing was only a few hundred feet distant; she explained that the noise of the other children in the house probably prevented the sound from reaching her. Photographs in evidence show maintenance of the crossing with crushed rock between the rails and on the approaches. The roadbed was elevated about four feet above the surroundings. The pictures further disclose no obstructions to the view of the crossing and approaching trains and, by the same token, some of the train crew should have seen the au-

tomobile on its way to its doom when they might have taken preventive action.

The suit was brought against the railroad company and its engineer who was operating the train. There were the usual allegations of negligence in such cases with departure in the form of statement of them. This portion of the complaint is here reproduced:

"7. That without limiting the generality of the foregoing allegations of negligence, willfullness and wantonness, plaintiff alleges, on information and belief, that her intestate's death was proximately caused by the defendants in the following particulars:

"(a) In failing to maintain the said crossing in a safe and usable condition in that the iron rails were allowed to project above the level of the ground as hereinabove referred to;

"(b) In failing to place signs on the road immediately adjacent to the crossing with the words 'RAILROAD CROSSING' printed thereon in large letters as required by the statute of the State.

"The delicts alleged in (a) and (b) are delicts directly chargeable to the corporate defendant, Southern Railway Company;

"(c) In failing to sound the bell or blow the whistle as the train approached the said crossing.

"(d) In failing to keep the proper lookout for persons using the same;

"(e)  *  *  *

"(f)  *  *  *".

The answer denied the material allegations of the complaint and contained the affirmative defense of contributory negligence, gross negligence, etc., of the deceased and of the person having charge of the decedent. See section 8377 of the Code of 1942.

For lack of supporting evidence the trial judge ruled out all of the alleged acts of negligence except that styled (d) in the complaint, that is, the alleged failure on the part of the defendants to keep a proper lookout. Verdict was returned only against the railroad company and thus the personal defendant, the engineer, was acquitted of negligence, etc.

A major position of appellant is that the effect of the verdict by its release of the engineer, was also to release appellant under the doctrine of *Carter v. Atlantic Coast Line R. Co.*, 194 S. C. 494, 10 S. E. (2d) 17, and kindred cases. It is strongly argued that the meaning of the allegations of the complaint, copied above, was to charge the company with negligence through agents other than the engineer only in specifications (a) and (b), and that the single specification submitted to the jury, that concerning lookout, referred to the alleged negligence, etc., of the defendant engineer, so that the acquittal by the jury of the latter necessarily acquitted appellant. The argument is answered by respondent by the contention that specifications (a) and (b) referred to acts of agents of the company other than the members of the crew in charge of the operation of the train and that (d) refers to the failure of all of the crew to keep a proper lookout. This is justified by a liberal construction of the complaint, which is required, and appellant's position in this respect is therefore untenable, so that ground of its motion for judgment *non obstante veredicto* was properly overruled. *Carter v. Southern Ry.*, 93 S. C. 329, 75 S. E. 952. *Rhodes v. Southern Ry. Co.*, 139 S. C. 139, 137 S. E. 434.

In *Carter v. Southern Ry., supra,* 93 S. C. 329, 342, 75 S. E. 952, 956. the Court said: "The testimony was not clear as to what the engineer could see on the left of the center of the track. The jury may have thought that the engineer's view was obstructed by the boiler, and that the fireman [the agent of the defendant company], who was on the left side of the engine, was at fault in not notifying

him of the danger in time." In his dissent upon another point of the case, Mr. Justice Woods said 93 S. C. at p. 350, 75 S. E. at page 959: "The position that a verdict against the railroad company, and not against the engineman, is contradictory is unsound, and is disposed of by the case of *Ruddell v. Seaboard Air Line Ry.,* 75 S. C. 290, 55 S. E. 528, and the cases there cited."

The absence of evidence of failure of the train to give the statutory crossing signals converted the action, as held by the trial judge, to one solely at common law so the provision of sec. 8377 of the Code to the effect that gross negligence of the driver of the automobile is imputable to the guest passenger (the intestate) is inapplicable. The contrary point of the appeal is, therefore, without merit. *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742. *Smith v. Southern Railway,* 193 S. C. 44, 7 S. E. (2d) 630. *Crapse v. Southern Railway,* 201 S. C. 176, 21 S. E. (2d) 737. The gross negligence, recklessness, etc., if any, of the driver here could not be imputed to plaintiff's intestate whom the evidence shows was a guest.

The foregoing disposes of two of appellant's questions, adversely to it. The third assigns error in the refusal of motions for directed verdict and for judgment *non obstante* upon the ground that the only reasonable inference from the evidence is that the intestate was guilty of contributory negligence, wilfullness, etc. It is untenable under the meagre testimony. His conduct and that of the automobile driver are not explained in the evidence and we may only conjecture as to their acts immediately preceding the collision. There may have been mechanical failure of the automobile and it may have stalled upon the rairoad track. Observant trainmen may have given the answers had they testified. This feature will be elaborated later. Contributory negligence is an affirmative defense which must be proved by the pleader.

The most difficult question is left undecided by what has been said. It arises from the contention that verdict for appellant should have been directed or set aside upon the motion for judgment *non obstante* because of the lack of proof of facts from which it could have been reasonably found that the alleged negligence in failure to keep a proper lookout was the proximate cause of the collision. Fuller statement of the facts in evidence is necessary.

A witness for respondent was a deputy sheriff who answered a call to investigate the wreck. He arrived on the scene shortly after six o'clock and found the train stopped about half or three-quarters of a mile beyond the crossing, the chassis of the automobile beneath and effort was being made to extricate it by moving the train alternately forward and backward. The witness talked to the engineer of the train who said that he did not see the collision and his attention was first attracted by the noise under the train, and he then applied the brakes. The witness said that the railroad track was straight for miles in both directions from the crossing. The engineer told him that he thought no one was in the automobile when it was struck but the witness located a part of the body of one of the victims under the train and other parts strewn along the track. One body was about 120 feet from the crossing and that of respondent's intestate 240 feet. He smelled the odor of liquor on two of the bodies which he did not identify. He found the remains of an outboard motor in the automobile wreckage. The witness was of the opinion that there was nothing to prevent the engineer and firman of the train from seeing the automobile on or approaching the crossing.

Another plaintiff's witness saw the victims in the city of Orangeburg about 4:30 or 5:00 o'clock in the afternoon as they left to go to the river and declined an invitation to accompany them because he was working. He knew they did a lot of fishing on the river, several miles away. Neither respondent's intestate nor his brother owned the automobile.

The witness supposed it was owned by their host who drove it.

Appellant presented only one witness. He was a State highway patrolman who went with the deputy sheriff to the scene of the accident. His testimony agreed with that of the deputy with respect to the absence of obstructions to the view of travelers approaching the crossing, and, likewise, we add, to that of the train crew. He also heard the engineer say that he thought no one was in the automobile.

Under the facts in evidence the statement of the engineer that he did not see the automobile before the collision is proof that his lookout was not effective and is evidence that the other member of the crew, usually the fireman, whose duty it was to also keep a lookout, was negligent in that respect or in the failure to notify the engineer of what he saw. In overruling the motion for nonsuit the trial judge accurately observed: "I think on the question of failing to keep a proper lookout the statement of the engineer, as well as the fact that this train ran on for some distance after it passed this crossing, is some evidence that there was no lookout kept. The testimony is that the engineer said that he did not know he had hit this automobile and if the crew had kept a lookout at all it seems to me that they would have had to know it. The engineer said that he did not know that he had hit anything at all, but that after he got up the track he heard this noise, and I think that is sufficient proof to go to the jury on the question of failing to keep a proper lookout."

An applicable precedent is *Wilson v. Southern Railway*, 93 S. C. 17, 75 S. E. 1014, 1016. It involved a pedestrian fatality but the principles enunciated are pertinent here. We quote from the separate concurring opinion of Mr. Justice Woods, as follows: "The duty of a lomotive engineer and a fireman to keep a vigilant lookout ahead, for the sake of passengers as well as those who may be helpless on the track, is urgent, and the failure to keep a lookout may be evidence

of recklessness or wantonness. In this case the night of the fatality was bright and the locomotive had powerful electric headlight. There was evidence from which it might be inferred that Wilson was lying on the track asleep or drunk, or that he was crossing the track on his way home, and that the place was one where persons were to be expected crossing the track. The evidence also tended to show that those in charge of the engine did not see Wilson at all, for the train did not slow up or stop. From all this the jury might infer that no lookout was kept, and that this was a reckless disregard of the lives of those who might be on the track even as trespassers."

The members of the train crew were not called as witnesses by appellant and no explanation was made, which strengthened the factual showing for respondent under the rule last stated in *Mickle v. Dixie Security Life Ins. Co.,* 57 S. E. (2d) 73, 76, as follows: "It is well settled that if a party fails to produce the testimony of an available witness on a material issue in the case, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness; as where there is a failure to call an almost indispensable witness to the transaction giving rise to the controversy. *Robinson v. Duke Power Co.,* 213 S. C. 185, 48 S. E. (2d) 808; *Gaskins v. Firemen's Ins. Co.,* 206 S. C. 213, 33 S. E. (2d) 498; *Wingate v. Postal Telegraph & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307."

From the foregoing facts and observations it is clear that it was not error to submit to the jury the questions of negligence and willfulness of appellant and proximate cause here where the evidence tended to show that respondent's intestate was the guest of the owner-driver of the ill-fated automobile. See the decisions cited *supra* upon the subject of imputation of the acts of vehicle driver to his passenger guest. As said by the present Chief Justice in *Lusk v. State Highway Department,* 181 S. C. 101, 107, 186

S. E. 786, the doctrine of common enterprise or imputing the negligence of vehicle driver to passenger or guest is practically limited to master and servant or principal and agent.

The exceptions are overruled and the judgment affirmed.

FISHBURNE and TAYLOR, JJ., concur.

BAKER, C. J., and OXNER, J., dissent.

BAKER, Chief Justice (dissenting).

I regret that I cannot concur in the majority opinion.

It appears to me that to affirm the judgment in this case will be in direct conflict with the case of *Carter v. Atlantic Coast Line Railroad Co., et al.,* 194 S. C. 494, 10 S. E. (2d) 17, and the long line of cases therein cited, the soundness of which decisions cannot be questioned.

While the prevailing opinion sets out paragraph 7 of the complaint which contains specifically the acts of negligence, willfullness and wantonness on the part of the corporate defendant, and of its engineer in charge of the operation of its engine (locomotive) at the time of the accident, the sole co-defendant, of which the plaintiff-respondent complains, and which acts of alleged negligence, willfullness and wantonness are separated as between the corporate defendant and the engineer as its servant, yet I think that other portions of the complaint, paragraphs 3, 6 and 8, should, also and along with paragraph 7, be set out for contextural and other reasons hereinafter appearing. We quote said paragraphs of the plaintiff-respondent's complaint:

"3. That upon information and belief, the defendant, Harry McNeer, is a resident of the County of Charleston, said State, *and is employed by his co-defendant as a locomotive engineer and was operating the locomotive engine of his co-defendant at the time and place hereinafter mentioned."* (Emphasis added.)

"6. That on information and belief, on September 4, 1948, plaintiff's intestate was riding as an invited quest in the automobile owned and operated at the time by Ernest Brunson,

and as the said automobile was in the act of crossing the intersection, having approached the same from the West, *plaintiff's intestate and the car in which he was riding was struck by one of the engines of the corporate defendant traveling in a northerly direction and being operated at a high and dangerous and unlawful rate of speed by the engineer in charge thereof without sounding the bell or blowing the whistle, as required by law to be done in such cases, and without keeping a proper lookout for motorists using the said public road and crossing.* Plaintiff's intestate was struck and his body was so injured and mangled that he died from the injuries shortly thereafter; that remnants of his body and of the automobile in which he was riding were scattered and strewn along the said right-of-way of the defendant railway company for a distance of between three-fourths of a mile and one mile North of the scene of impact.

"7. That without limiting the generality of the foregoing allegations of negligence, willfullness and wantonness, plaintiff alleges, on information and belief, that her intestate's death was proximately caused by the defendants in the following particulars:

"(a) In failing to maintain the said crossing in a safe and usable condition in that the iron rails were allowed to project above the level of the ground as hereinabove referred to:

"(b) In failing to place signs on the road immediately adjacent to the crossing with the words 'RAILROAD CROSSING' printed thereon in large letters as required by the statute law of the State.

*"The delicts alleged in (a) and (b) are delicts directly chargeable to the corporate defendant, Southern Railway Company;*

"(c) In failing to sound the bell or blow the whistle as the train approached the said crossing;

"(d) In failing to keep the proper lookout for persons using the same;

"(e) In operating, and permitting the said engine to be operated, at a high and dangerous rate of speed—so great that the train was run for a distance of more than three-

quarters of a mile after it struck the automobile in which plaintiff's intestate was riding;

"(f) In failing to have lights on the said engine at the time and place as the collision occurred late one evening and the weather was cloudy and visibility was so bad that ordinary prudence and care required that lights on the train be turned on.

"8. *That the acts of negligence, willfullness and wantonness herein alleged as having been committed by the corporate defendant and the defendant engineer combined and concurred to proximately cause the death of plaintiff's intestate,* and plaintiff alleges that she is now entitled to recover of the said defendants on account of said wrongful death the sum of  *   *   *." (Emphasis added.)

The only specification of negligence submitted to the jury was "(d) In failing to keep the proper lookout for persons using the same (the crossing)."

The complaint in this action may be gone over with a fine tooth comb, but nowhere therein will it be found that any servant or agent of the corporate defendant was charged with failing to keep a proper lookout for persons using the crossing at which plaintiff-respondent's intestate met his death other than the engineer who was controlling the movement of the locomotive engine at the time, and who, as aforesaid, was joined in the action as a co-defendant. In fact, if there can be any doubt as to whether the other paragraphs of the complaint confined the delict complained of and submitted to the jury, to the engineer, such doubt is dispelled by paragraph 8 of the complaint, which limits the reliance of the respondent on the delict of any servant or agent of the corporate defendant, under the doctrine of *respondent superior,* for a recovery against the corporate defendant, to the engineer.

The jury, by its verdict, having absolved the co-defendant engineer of any negligent act, the appellant corporate defendant was clearly entitled to have a verdict directed in its favor *non obstante* on its motion seasonably made.

OXNER, J., concurs.