**ATLANTIC COAST LINE R. CO. v. GLENN.**

**No. 6420.**

United States Court of Appeals
Fourth Circuit.

Argued June 25, 1952.

Decided July 28, 1952.

3. Bell v. United States, 4 Cir., 185 F.2d 302, 308.

Douglas McKay, Columbia, S. C. (Douglas McKay, Jr., and Julius W. McKay, Columbia, S. C., on brief), for appellant.

Claud N. Sapp, Jr., Columbia, S. C., (Allen M. Sapp, Columbia, S. C., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and PAUL, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of South Carolina, pursuant to a jury verdict, awarding $54,600.00 in damages to the plaintiff. The action was brought under the provisions of "Lord Campbell's Act," Sections 411 and 412, Code of Laws of South Carolina (1942), by the widow of a deceased, on behalf of herself and three minor children as beneficiaries, to recover damages for the alleged wrongful death of her husband, arising out of a collision between an automobile driven by him and the defendant's train at a country railroad crossing.

The District Court overruled the defendant's motions for a directed verdict and for judgment notwithstanding the verdict, and we are called upon to decide whether these rulings are correct. We think that the motions should have been granted on the ground that the evidence conclusively shows plaintiff's intestate to have been guilty of gross contributory negligence as a matter of law.

The collision involved here occurred on December 28, 1950, at or around 1:30 P.M. at a grade crossing of the defendant railroad near the defendant's station of Sims, in Richland County, South Carolina. The deceased was proceeding in his Ford automobile from his home near Highway No. 76 to his store on Bluff Road, a dirt highway running nearly parallel but some miles South from Highway No. 76. This was not his usual route to the store although he had traveled this way before. With him in the car were his two nephews, Thomas G. Wilson, Jr., and William A. Davis, each of whom was thirteen years old.

The track at the grade crossing runs East and West, and the dirt road crosses it at a right angle. The crossing is marked with the usual cross-buck sign. The record contains varying testimony as to the existence of obstructions to the deceased's view of the track when he approached the crossing. Some of the plaintiff's witnesses testified to the presence of a growth of weeds and bushes, plus a black jack oak thicket blocking the view. But the evidence is clear that for approximately sixty feet the deceased had a clear view up and down the track. This sixty foot distance comprised the railroad's right of way and was cleared of any obstructions. The bushes, weeds and black jack oaks were further back in a field along the dirt road and could have impeded the deceased's vision only up to where the cleared right of way began.

The defendant admits that the woods road which extended within the northern side of its right of way toward the West has been widened on its northern edge since the collision, but it is nevertheless quite apparent that the sixty foot cleared distance was present before the alteration.

There was considerable testimony that no signal, either by bell or whistle, was given before the defendant's train reached the crossing. However, one witness, who was walking along the dirt road on the other

side of the crossing from the deceased, testified that he saw smoke from the train and heard the train coming.

It was a cold day, one of the worst of the winter, but the testimony conflicts as to whether the windshield and windows of the deceased's car were blurred by ice. The windows of the car were closed. In any event, one of deceased's nephews, William Davis, testified that he did not see the train before it struck the car. He also testified that his uncle, the deceased, did not look up and down until the automobile was almost on the track.

Instead, the deceased drove straight ahead, although apparently slowing down somewhat to take a last minute glance, and the car was hit by the defendant's engine. The deceased was thrown out of the car, and under the train some hundred feet before the final stop and apparently was instantly killed. The two boys were taken from the car more or less seriously injured.

■ It is settled that under South Carolina law the failure by those in charge of a train to give the proper signals at a crossing is negligence per se and requires a defense of gross contributory negligence to relieve the railroad of liability. Ford v. Atlantic Coast Line R. Co., 169 S.C. 41, 168 S.E. 143, affirmed Atlantic Coast Line R. Co. v. Ford, 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed 457; Glenn v. Southern R. Co., 145 S.C. 41, 142 S.E. 801; Timmons v. Southern R. Co., 138 S.C. 82, 136 S.E. 27. But simply to label a condition as "gross" does not mean that it is impossible to prove its existence. We think the evidence conclusively shows that the plaintiff's intestate acted in utter disregard of his own safety, and that this lack of care meets the South Carolina statutory requirements as a complete defense to this action.

Two factors compel us to this conclusion. The first is that there was a cleared right of way extending approximately 60 feet on either side of the track at the time of the collision. There is no reason to suppose that this is not ample space for a motorist to observe the track and see if a train is coming.

The second factor is the testimony of the nephew, William Davis, who was riding in the car at the time of the accident, to the effect that his uncle, the deceased, did not look up and down until the car was almost on the track. As Davis described it: "Well, we slowed down and then he looked towards me and then he looked back the other way, and about that time something hit us, and it just went black." Davis further testified that "it was all in a split second" and that his uncle "was right up on the track" when he looked. There is only one inference which can be drawn from such testimony, and that is that, despite the sixty foot distance in which the track could easily have been scanned, the deceased did not avail himself of this opportunity. Instead, he drove straight up onto the track, bestowing a glance to either side only an instant before the train struck the car.

■ The South Carolina Court in construing its state statutes with respect to crossing collisions, has often reiterated the rule that, despite the negligence of the railroad, a traveler cannot recover who takes no precaution whatsoever at the crossing, when any precaution would have warned him before going on the track and prevented the injury. Robison v. Atlantic Coast Line R. Co., 179 S.C. 493, 184 S.E. 96; Osteen v. Atlantic Coast Line R. Co., 119 S.C. 438, 112 S.E. 352; Cable Piano Co. v. Southern R. Co., 94 S.C. 143, 77 S.E. 868; Drawdy v. Atlantic Coast Line R. Co., 78 S.C. 374, 58 S.E. 980. As was well said in Robison v. Atlantic Coast Line R. Co., supra, 179 S.C. 493, 184 S.E. at p. 100:

"The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train. * * * And, because of the danger, there is imposed upon such person the duty of reasonable care and caution and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and, subject to applicable qualifications and limitations, he is required at least to

look and to listen for an approaching engine or train before venturing to cross the track; and, if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and, if such failure results in injury, he is left without a remedy."

See also, Carroll v. United States, 87 F. Supp. 721; Arnold v. Charleston & W. C. Railroad Co., 213 S.C. 413, 49 S.E.2d 725; Breedin v. Rockingham Railroad Co., 193 S.C. 220, 8 S.E.2d 366; Smith v. Southern Railway Co., 193 S.C. 44, 7 S.E.2d 630.

For the foregoing reasons the judgment of the District Court will be reversed and the cause remanded with directions to enter final judgment for the defendant.

Judgment reversed.