## *EX PARTE* BACOT.

1. Certiorari—Right of Way.—Will a writ of *certiorari* lie to require proceedings to acquire a right of way, pending before the clerk of the Court of Common Pleas, to be certified to the Supreme Court for examination and review ?

2. Ibid.—Supreme Court.—Under the Constitution of this State, the Supreme Court can issue its writ of *certiorari* only when necessary to the exercise of a supervisory control over inferior courts, and cannot determine under this proceeding whether such courts have committed errors of law or of fact in the matter complained of.

3. Rights of Way—Jurisdiction.—Whether several distinct land owners may be joined in one proceeding to acquire a right of way, and whether persons holding equitable interests should be served with personal notice of the application, are questions merely of practice, and not jurisdictional.

4. Ibid.—Notice—Description.—Where an application to acquire a right of way is filed and notice thereof is given by the attorneys, and the record shows that the parties in interest were notified of the proceedings, no question of jurisdiction is involved. The law does not require service upon the parties of the petition to the judge to appoint a jury to assess damages ; and the land sought to be condemned was sufficiently described in this case.·

5. Ibid.—Constitutional Law.—An act of the legislature giving to a mining and manufacturing company, on payment of just compensation, a right of way over the lands of another for the purpose of constructing a railroad from its works to connect with some existing railroad is within the power and discretion granted to the legislature by article I., section 23, of the Constitution of this State.

6. Ibid.—Ibid.—This company having been granted a right of way for its connecting road, had the right, under the general law governing rights of way to railroads, to cross any public highway, as well as intervening private lands.

7. Subject Expressed in Title of Act.—An act whose title is "An act to provide for the formation of certain corporations under general laws," is sufficiently expressive of the subject of the act, which embraces powers given to corporations formed thereunder, including the power to certain corporations to build connecting railroads and other means of transportation.

This was an original application by Daniel H. Bacot to this court for a writ of *certiorari*. The opinion states the case.

*Mr. T. W. Bacot,* for relator.

*Messrs. Howell, Murphy & Farrow*, contra.

April 19, 1892.　The opinion of the court was delivered by

Mr. Justice McGowan.　This is an application to this court in its original jurisdiction for a writ of *certiorari*.　The facts are somewhat complicated and it will be necessary to make a statement, as condensed as possible, to be intelligible.

The petition of Daniel H. Bacot, among other things, states that on or about August 20, 1890, a paper was served upon him, signed by Howell, Murphy & Farrow and Edwards, attorneys of the "Horse Shoe Mining Company," purporting to be a notice that said company required a right of way over a tract of land known as the "William Lowndes tract," alleged to belong to the petitioner (the same paper being served also upon others, as to other tracts of land).　That the petitioner served upon said attorneys a return in writing, showing that he was not the sole owner of the said tract; that, although the legal title was in himself alone, yet the real owners thereof, besides himself, were his mother, Julia A. Bacot, and his brothers and sisters, naming them, reserving to himself any objection to said notice, and signifying his refusal of consent to enter upon said lands, without previous compensation.　Other land owners also signified their refusal to consent to the entry upon their lands without previous compensation.

That thereupon the "Horse Shoe Mining Company" applied by *ex parte* petition to his honor, Judge Aldrich, for an order to empanel a jury to assess the damages or compensation for the right of way required, which order was granted, directed to the clerk of Colleton County, commanding him to empanel a jury for the purpose aforesaid; and the said clerk, in obedience to said order, gave notice to the parties in interest of the time and place appointed for empanelling the jury, &c.　Before the day fixed for drawing a jury, upon the suggestion of the petitioner, a rule was issued requiring the said company to show cause why a writ of prohibition should not issue to prohibit further proceedings in the matter of the right of way, which, after return and argument, Judge Aldrich refused.　From this order of refusal, notice of appeal was given; but, as we understand it, upon some

agreement and by consent of parties, the appeal was "withdrawn without prejudice," and this proceeding for a writ of *certiorari* was instituted.

The petitioner insists that in a proceeding to acquire such right of way as the said company is said to require, an appeal is allowed on the question of compensation only ; and that the tribunal constituted by the general assembly for the subject matter of conducting proceedings to acquire rights of way by railroad corporations, though having general jurisdiction of the subject, has yet not acquired jurisdiction in the proceedings sought to be instituted on behalf of the said "Horse Shoe Mining Company," and said proceeding is an unwarranted invasion of the rights of your petitioner and the other owners of said lands, and is illegal and void and also irregular on the following grounds and for the following reasons :

*First.* Because the act of December 23, 1886, or rather the 15th section thereof, is unconstitutional in that it is repugnant to or in violation of article I., section 23, of the Constitution of the State, and the underlying and immutable principles of so-called eminent domain, the road proposed to be constructed and operated by the said "Horse Shoe Mining Company" over the aforementioned tract of land being for its own private use and purposes and other than a right of way by necessity, and not for a public or even *quasi public* purpose or use.

*Second.* Because the said proposed road will cross a public road or highway without authority so to do, and to the serious obstruction thereof to your petitioner and others aforesaid.

*Third.* Because the said company is not authorized by its charter or otherwise to construct a railway, canal, turnpike, or other public highway in the State.

*Fourth.* Because (*a*) the said company has given no notice, as required by section 1550 of the General Statutes ; (*b*) that said company did not apply by petition to the judge, &c., as required by the section 1551, General Statutes ; (*c*) the petition, by which application was made to Judge Aldrich, did not set forth a description of the lands, in that it did not state where they were situated, nor did it set forth the names of the owners of the said "William Lowndes tract," as required by the section 1551, Gen-

eral Statutes; (*d*) the application by petition to Judge Aldrich and his order thereon of September 26, 1890, were *ex parte* and without any notice whatever thereof to the owners of said tracts of land or any of them, and, therefore, in violation of the said section 1551, and of article I., section 14, of the Constitution of the State; (*e*) and the clerk of the Court of Common Pleas of the County of Colleton did not give notice of the order of Judge Aldrich of September 24, 1890, to your petitioner or to any of the other owners of said tracts, as required by said section 1551; (*f*) it is not shown that the proposed road is to connect with some navigable stream or with some existing railroad, turnpike, or other public highway, and does not exceed ten (10) miles in length.

*Fifth.* Because the said proceeding is otherwise irregular in that (*a*) the same proceeding for such purpose cannot be had against separate and distinct owners of separate and distinct tracts of land jointly; and (*b*) such a proceeding should be against all the owners of a tract of land, through which right of way is acquired, and cannot be against one of them only for all.

Wherefore the petitioner prayed to be relieved, and that said proceedings may be removed to this court, and that a writ of *certiorari* be directed to the clerk of the said Court of Common Pleas of the County of Colleton, commanding him without delay to certify the said proceedings and record together with all papers thereto appertaining, that such further proceedings may be had as to this honorable court shall seem meet, &c.

The Horse Shoe Mining Company having been served with a rule to show cause why the writ should not issue, answered, among other things, as follows: "It is a mining company incorporated under and in pursuance of the law of the State, contained in an act 'to provide for the formation of certain corporations under general laws,' which said act authorizes the company to construct and operate a railroad for its own use and purposes, to and from its works with some existing railroad, and for that purpose the company is authorized and empowered to condemn for the use of such road the right of way in lands over which the road may pass, on payment to the owner thereof of 'just compensation,' such compensation to be determined in the manner pro-

vided by law for railroad corporations. That finding that a railroad was necessary for the purpose of conducting its business, through its attorneys thereunto duly authorized, it caused the notices required by law to be served on the petitioner and others, requiring a right of way over his and their lands, for the purpose of constructing a railroad from its works to Ashepoo Station and there connecting with an existing railroad, to wit, the 'Charleston and Savannah Railway,' said railroad to be five and one-half ($5\frac{1}{2}$) miles in length. That about two and one-half miles had been previously constructed and a temporary landing secured on leased premises on the Ashepoo River, but the short line was, and is, wholly inadequate to the business necessities of the company; that the company has erected expensive works, putting in costly machinery, and has expended large sums of money, in the development and prosecution of its business, employing many men in its mining operations."

The return then goes on to set out, in a formal way, matters referred to in the petition, as to the notice to the petitioner and others, that certain lands were "required" for the purpose aforesaid, their refusal to give consent without previous compensation, and making full exhibits of said answers. And after stating the proceedings by petition to have a jury empanelled to assess the damages, and the application of the petitioner for a writ of prohibition, which was refused, the respondent company prays that the writ may be refused, and for costs.

The questions involved in this case have been argued with learning, showing much research on both sides. We have very grave doubts whether this is a proper case for *certiorari*.

1 The proceeding below is not finished but is still in progress. We do not understand that the clerk of the Court of Common Pleas of a county is an "inferior court" in the sense of the limit on the authority of this court to issue such a writ. In proceedings to assess damages for a right of way, the clerk has certain duties to perform in empanelling a jury, &c., but that is rather ministerial in character, done under the orders of the Court of Common Pleas, whose officer he is. What right have we to order the clerk of Colleton, who is not before the court, to certify up the record of certain proceedings of the Court of Com-

9—36

mon Pleas? And if we had the power, what record could he certify to this court, except perhaps the order under which he acted and his own notice to the parties of the time and place appointed for drawing a jury? The real matter in contention is not the single act of the clerk in giving notice as to the organization of the jury, but it lies farther back, as to whether the Circuit Judge could make the order to assess damages, without having first determined the rights of the parties. But as it concerns the correct administration of the law, that the question raised by the relator should have a solution, and as it seems to be conceded that *prohibition* is not the remedy, and that there has been some agreement between the parties on the subject, we have concluded to consider the case, remarking, however, that it must not be drawn into a precedent, as we make no ruling upon the subject.

Upon an application for a writ of *certiorari*, this court cannot be expected to try the whole case *de novo*, with its numerous parties and details, involving questions of procedure, practice, regularity, &c. We regard it settled, at least in this State, under our Constitution, that the jurisdiction of the Supreme Court embraces the writ of *certiorari* only when necessary to exercise a general supervisory control over an inferior court; that is, especially in respect to its jurisdiction, and not to determine whether in the matter complained of, it has committed errors of law or of fact. *Ex parte Childs*, 12 S. C., 111; *State ex rel. Sawyer* v. *Fort*, 24 *Id.*, 516; *State ex rel. Richland County* v. *Columbia*, 16 *Id.*, 413; *Ibid.*, 17 S. C., 80. Now the only question is, whether any of the grounds urged for the writ of *certiorari* are necessary to enable this court to exercise a supervisory control over the court below. Assuming for the present that the act incorporating the "Horse Shoe Mining Company" is *constitutional*, the Circuit Court had jurisdiction of the subject-matter, and the procedure was to be in the manner provided by the general law for railroad corporations.

Sections 1550 and 1551 (General Statutes) provide as follows: "Whenever any person or corporation shall be authorized by charter to construct a railway, canal, turnpike, or other public highway in this State, such person or corporation, before entering upon any lands for the purpose of con-

struction, shall give to the owner thereof (if he be *sui juris*) notice
in writing, that the right of way over said lands is required for
such purpose, which notice shall be given at least thirty days
before entering upon said lands. * * *   If the owner of such
lands shall signify his refusal of consent to entry upon his lands,
without previous compensation, the person or corporation requir-
ing such right of way shall apply by petition to the judge of the
Circuit where such lands are situated, for the empanelling of a
jury to ascertain the amount which shall be paid as just compen-
sation for the right of way required, in which petition shall be
set forth a description of the lands, the names of the owners, the
purposes for which the lands are required, and such other facts as
are deemed material.   On the hearing of such petition, the Cir-
cuit Judge shall order the same to be filed in the office of the
clerk of the Court of Common Pleas, to empanel a jury, &c."

Having jurisdiction of the subject-matter, did the court acquire
jurisdiction of the persons of the land owners by following the
above directions of the law as to notice, petition for jury, &c.?
In reference to the objection embraced in the *fifth* ground for the
writ, we think there is nothing beyond possible irregularity.
Whether in a proceeding to acquire a right of way over land,
several land owners may be joined, or whether all the parties hav-
ing equitable interest must be served with personal notice, are
questions merely of practice, and are certainly in no way jurisdic-
tional.   See *Tompkins* v. *Railroad Company*, 21 S. C., 431;
*Tutt* v. *Railway Company*, 28 *Id.*, 399.

In reference to the numerous objections in the *fourth* ground
for the writ, we would make the same general remark.   It might
possibly become a jurisdictional question if the court were
proceeding to judgment, without giving the parties any
notice, but we see no reason why the company could not
give notice and file the petition by attorney.   The parties seem
to have been notified, and the objection is rather as to the man-
ner in which it was given.   That the parties had notice is shown
by their appearing and making return that "they refused con-
sent without previous compensation," and also by the fact that
they are here resisting the proceeding.   It is true that the par-
ties in their original return did not do more than refuse consent

without compensation, and did not in express terms deny the right of the company as was done in the case of *State* v. *Columbia &c. R. R. Co.*, 1 S. C., 50. But it seems to us that it might have been better if the law had required that the petition to the judge to appoint a jury to assess damages should be served on the parties, so that they might then and there have made the question of right. It is, however, enough for us to say that the law did not require it. As to the alleged description of the land, see *Ex parte Bennett*, 26 S. C., 319.

*First.* Then as to grounds urged for the writ, alleging that the 15th section of the act of 1886, under which the Horse Shoe Mining Company was incorporated is *unconstitutional and void*. We will suppose that question to have been considered by the Circuit Judge when the *ex parte* application was made to him for the order to empanel a jury to assess the damages, and in granting that order that he assumed its constitutionality. The relator, however, complains that he was not heard on that question, and that he could not now appeal to this court except as to the amount of damages. Is that a jurisdictional question? The matter is important, and although the relator did not in the first instance deny the right, we think he should be heard upon this subject.

The act of December 23rd, 1886, is entitled "An act to provide for the formation of certain corporations under general laws" (19 Stat., 544), of which section 15 reads as follows: "Corporations organized under the provisions of this act, for mining or manufacturing purposes, shall have power to construct and operate a railroad, tramway, turnpike, or canal, for their own use and purposes, to and from their works or place of business, or to connect with some navigable stream or with some existing railroad, turnpike, or other public highway, not to exceed ten miles in length, and shall have the right to condemn for the use of such road, the right of way in lands over which the road may pass, on payment to the owner thereof of just compensation, such compensation to be determined in the manner now provided by law for railroad corporations." Under and by authority of this section, the Secretary of State, J. Q. Marshall, Esq., on March 29th, 1889, certified that the Horse Shoe Mining Company had

been fully and regularly "organized" according to the laws of the State, under the name and for the purposes indicated in their declaration. The question now is whether section 15 of the act of 1886 is constitutional, for if so, we may consider it as incorporated into and made part of the certificate or charter.

The question is a new one in the State. Having no beds of coal, we have had occasion for very little mining until the phosphate beds were discovered and are being developed. Article I., section 23, of the Constitution declares as follows: "Private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner or a just compensation being made therefor: *Provided, however*, that laws may be made, securing to persons or corporations the right of way over the lands of either persons or corporations, and for works of internal improvements, the right to establish depots, stations, turnouts, &c., but a just compensation shall in all cases be first made to the owner." This court has often had occasion to say, that it is no small matter to declare an act of the legislature unconstitutional. Mr. Cooley (Con. Lim., section 87) says that "the constitutionality of a law must be presumed, until the violation of the Constitution is proved beyond all reasonable doubt, and a reasonable doubt must be resolved in favor of legislative action, and the act be sustained."

In the light of this safe and sound principle, is the aforesaid section of the act of 1886 repugnant to the Constitution? Is it beyond doubt in violation of it, either in express terms or in spirit? The provision above quoted of the Constitution, as its terms indicate, was inserted for the double purpose of maintaining the sanctity of private property and at the same time of promoting internal improvements, especially in respect to rights of way over lands, and in establishing stations, &c., to facilitate transportation. It will be observed that the powers given in section 15 of the act of 1886 are limited to mining and manufacturing purposes; that the railroad to be constructed and operated must "run to and from the works" of the company, or connect with some navigable stream or some existing railroad, and not exceed ten miles in length. It would seem that a railroad to run to and from the phosphate works of the company, five and

one half miles, to Ashepoo Station on the Charleston and Savannah Railroad is not repugnant to the aforesaid provision of the Constitution, but on the same plane and in exact conformity therto. The objection seems to touch more the Constitution itself than the act.

It is urged, however, that the Horse Shoe Mining Company is a "private corporation," and therefore may not condemn lands for a right of way, even after paying a just compensation; that an attempt to do so is an invasion of the proprietary rights of the land owner and in violation of the Constitution. It certainly does not seem to violate the words of the Constitution as above cited, "that laws may be made securing to persons and corporations the and right of way over the lands of either persons or corporations," for works of internal improvement to establish depots, &c. Mr. Lewis, on Eminent Domain, at pages 162 and 238, says: "The necessity or expediency of exercising the power of eminent domain, and the extent and manner of its exercise, are questions of general public policy and belong to the legislative department of the government." The matter is somewhat like the lateral railroad act of Pennsylvania, which was declared constitutional, and in delivering the judgment of the court, Mr. Justice Woodward said: "The truth is, when a lateral railroad is laid upon intervening lands, private property is not taken for private use, but for public use, for clear and definite objects of a public nature, which are of sufficient importance to attract the sanction of the sovereign."[1]

We think it unnecessary, however, to say more upon the subject than to quote our own case of *State ex rel. Hamer* v. *Stackhouse*, 14 S. C., 422, in which it was held that the act of 1872, which empowers a land owner to secure a right of way over the lands of another violates none of the provisions of the Constitution of this State. In delivering the judgment in that case the late Chief Justice construed the provision of the Constitution now under consideration (§ 23) in connection with section 14 of the first article, and said (p. 423): "Hence the framers of the Constitution, while recognizing the sanctity of the rights guaranteed in the first section (14), thought proper to make provision in the

[1] *Hays* v. *Risher*, 32 Penn. St., 177.

second (23) not only in the appropriation of private property for public use, but, in the matter of the right of way, private property, even for private use; and to this end in the second section above will be found an express grant of power to the legislature to secure, by proper laws, a right of way, both to corporations and to persons over the lands of others, upon just compensation being first made to the owners of said lands."

*Second.* As to the proposed railway crossing a public highway. In the view that the company was granted the power to construct and operate the short road to and from their works, we can see no reason why the general law upon the subject of such crossings should not apply to this proposed railroad as well as to others.

*Third.* We have already held that the "Horse Shoe Mining Company" has all the powers embraced in section 15 of the act of 1886, and, as we understand it, that gives the power to construct and operate the railroad to and from the works of the company, connecting with the Charleston and Savannah Railroad at Ashepoo, and as an incident the right to condemn for the use of the road the right of way over intervening lands, upon paying just compensation.

Then as to the supplemental objection in reference to "the title" of the act of 1886. That act is what is called a general incorporation act, as its title indicates : "An act to provide for the formation of certain corporations under general laws." We do not think that it is contended that the act, as such, is necessarily unconstitutional and void. In its very nature various matters were to be considered under it, somewhat like an appropriation act, with a general title covering many particulars. The "subject" was the formation of certain corporations and it would seem that the right to form corporations would include the powers to be given to such corporations. How else could they be "formed" ? "When an act of the legislature expresses in its title the object of the act, the title embraces and expresses every lawful means to achieve the object, thus fulfilling the constitutional injunction, that every law shall embrace but one subject and that shall be expressed in the title." *San Antonio* v. *Mehaffy*, 96 U. S.,315, cited by Chief Justice McIver in

our own case of *Connor* v. *Railroad Company*, 23 S. C., 427, which we regard as conclusive of the matter here.

The writ of *certiorari* is refused.