15181

TAYLOR v. POWELL *ET AL.*

(12 S. E. (2d), 27)

June, 1939.

*Mr. John K. de Loach,* for appellants,

*Mr. Murdoch M. Johnson,* for respondent, 

December 10, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff suffered injuries to his person and damage to his automobile on June 11, 1936, in a railroad crossing accident. He brought suit for the recovery of damages against the defendant and obtained judgment for actual damages in the sum of $300.00, from which the defendant appeals.

The exceptions raise several issues, but, in our opinion, it is necessary to pass only upon the question whether the lower Court erred in overruling the defendant's motion for a directed verdict which was made upon the ground that the plaintiff's injuries and damage were brought about as a result of his own gross and willful negligence, which contributed thereto as a proximate cause.

The accident occurred at a point where the defendant's line of railroad was crosed by a short by-road or detour, on U. S. Highway No. 1, about a half mile from the city of Camden. A highway bridge or overpass was under construction at the time on U. S. Highway No. 1, and the detour had been provided for temporary use while the construction work was going on. It left the highway about a hundred yards from the overpass on one side and connected with the highway again about one hundred yards on the other side. The crossing made by the railroad and the detour was about 130 to 150 feet from the highway bridge. Many men were at work upon the bridge, and it had reached a stage where there was considerable scaffolding, up-rights and

wooden frame work, which in effect constituted a temporary trestle. There is testimony that at the time of the accident a concrete mixer was in operation, and there was much noise on or about the work.

The plaintiff was thoroughly familiar with the crossing in question. He testified that he had traveled on the detour and over this crossing almost every day since it had been in use, and sometimes twice a day. He said, "I did not need to have signs along the road to tell me that it was there. I knew it was there, and I had traveled it constantly." On the day of the accident he entered the detour, traveling toward the City of Camden, with U. S. Highway No. 1 and the over-pass bridge to his left. According to his testimony, his view to the left, from which direction the defendant's passenger train was approaching, was obstructed by the trestle work, an embankment, and a row of trees, and that a traveler approaching the temporary detour· crossing could see nothing in that direction "until you got up to the railroad". He said that he was traveling at a speed of about fifteen miles an hour, and did not see the train until it had reached the overpass bridge or trestle work, at which time he heard the whistle blow and the bell ring. He was then about ten or twelve feet from the railroad track, and immediately applied his brakes. The automobile stopped with its front wheels on or near the first rail of the track, where the defendant's engine collided with it and spun it around. The automobile came to rest facing in the opposite direction. As a result of the collision the plaintiff was thrown through the front door and sustained the injuries complained of. The engine of the plaintiff's train came to a stop about two car lengths beyond the point of collision. The speed of the train was twenty or twenty-five miles per hour.

An examination of the record discloses that the plaintiff does not at any place in his testimony say that he actually looked or listened or tried to see the train as he approached the crossing. He only recounts the reasons why a traveler situated as he was could not, because of the obstructions

referred to, see a train approaching from Camden. His testimony with reference to his conduct immediately preceding the collision is enlightening and significant as will be seen from the following quotations taken therefrom. He said that as he turned off the paved road on to the detour there is a "row of trees, a little bunch of pine over here to the left-hand side which cuts you off from seeing up the railroad, if you wanted to". And again, "I knew this condition that I have described to exist there. I knew that they were building that bridge there. I knew about the trees being along the side there because I traveled it twice a day sometimes, and I knew that that condition existed there." He further said that although he saw a car ahead of him on the detour drawn up on the side of the road short of the crossing, he "just kept straight on". And, according to his testimony, he was within ten or twelve feet of the track when he first became aware of the approaching train; and in this connection he says: "As it was coming under the trestle I heard the train blow. I looked up and saw it, and I reached down and got the brakes." And at another point he said: "The train blew as it came under the trestle; that was the first to my knowledge of seeing it. When I first heard it, of course the thing startled me."

Conceding that there was a failure on the part of the defendant to give the proper statutory signals on the approach of the train to the crossing,—although there is strong testimony to the contrary,—should it be held as a matter of law that the conduct of the plaintiff amounted to gross and willful negligence which contributed to his injuries as a proximate cause.

The question of what is required of a traveler about to cross a railroad track on a public highway has been so frequently determined by this Court, and so recently that we deem it unnecessary to review the decisions at length.

We said in *Carter v. Atlantic Coast Line R. Co.,* 194 S. C., 494, 10 S. E. (2d), 17, 20. "A rule firmly established by the foregoing cases is that a traveler

on reaching a railroad crossing and before attempting to go upon the track, must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains; if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control, he must look and listen at a place and in a manner that will make the use of his senses effective. Another principle which the cases sustain is that the duty of a traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances."

While it is ordinarily a question for the jury in the application of the standard of due care, to say whether the attempt of the traveler to cross without looking and listening effectively was excusable or culpable—that is, whether or not it amounted to negligence or willful misconduct, nevertheless the circumstances may be such that the existence of negligence or gross contributory negligence becomes a matter for the determination of the Court and not for the jury, as where the existence of contributory negligence is the only conclusion deducible by a reasonable mind.

Summarizing and restating pertinent rules and principles announced in many previous cases, we also stated in *Carter v. Atlantic Coast Line R. Co., supra:* "Where the view or the hearing of a traveler approaching a railroad crossing is obstructed, he is under the duty of using greater care and prudence in looking and listening for approaching trains than where there is no obstruction. The degree of care which he must exercise in such cases, particularly where he is familiar with the crossing, must be in proportion to the increase of danger, and must be such care and prudence in looking and listening as an ordinarily prudent man would exercise under like circumstances of obstructions to view or hearing,—the question of the exercise of proper care and prudence in looking and listening depending upon the circumstances at the time and crossing."

It is clearly evident that the plaintiff neither looked nor listened, and was only shocked to a sense of his peril when he was within ten to twelve feet of the crossing, by an approaching train 150 feet away. He said that when the engine whistle blew and the bell rang, at the place of the construction work, he "looked up", and it "startled" him. And it was not until then that he reduced his speed.

We have here the case of a traveler who was completely familiar not only with the crossing, but with the entire physical situation and all the surroundings. According to his own testimony, he knew of the presence of all the things which he says obstructed his vision. From his testimony the only reasonable inference to be drawn is that he knew an approaching train could not be seen until he had practically reached the railroad track, and yet there is no evidence that he ever looked or listened for an approaching train. We are forced to the conclusion that the plaintiff had used the detour so often, and had become so accustomed to the crossing that he took it as a matter of course, and was apparently oblivious of the fact that he was approaching a spot beset with danger.

Applying recognized legal standards to the conduct of the plaintiff under the circumstances surrounding him at the time of the accident, we think the conclusion is inescapable, as a matter of law, that the injuries he sustained were brought about by his own gross and willful negligence and disregard of duty.

Judgment reversed, and case remanded for entry of judgment in favor of the defendant.

Mr. Chief Justice Bonham, Mr. Justice Baker and Mr. Acting Associate Justice L. D. Lide concur.

Mr. Justice Stukes concurs in result.

Mr. Justice Stukes (concurring in result):

I concur in the result but for the reason that in my opinion the testimony thereabout is reasonably susceptible only of the inference that the statutory crossing signals were

properly given by the defendants, and further that plaintiff's testimony is likewise reasonably susceptible only of the inference that he was guilty of negligence which contributed to his injury as a proximate cause. Under the circumstances here it would serve no useful purpose to undertake to review the evidence relating to the giving of the statutory signals in order to justify the conclusion first stated. Suffice it to say that the testimony of plaintiff himself made no issue thereabout for the jury. His one other witness was also unsatisfactory.

Plaintiff's testimony, much of which is narrated and some quoted in the main opinion, demonstrates, in my judgment, his guilt of negligence within the "reasonable inference" rule; but I think it was the result of unconscious failure to observe due care and not gross and willful negligence, not the "conscious disregard of the obligation of due care", necessary to defeat recovery for his injuries under the statute, Code, Section 8377, applicable here if the evidence had been susceptible of a reasonable inference that the required crossing signals had not been given.

I am in disagreement with the broad statement that obstructions to the view of a highway traveler approaching a railroad crossing require a degree of care in proportion to the increase of danger occasioned by the presence of the obstructions, for carried to its conclusion it would mean that the traveler must overcome such hazards by whatever increase of care that may be necessitated, resulting practically in the application of the rule projected in the famous case of *Baltimore & O. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, which this Court has consistently declined to follow (*Key v. Railroad Co.,* 150 S. C., 29, 147 S. E., 625; *Holladay v. Railroad Co.,* 150 S. C., 243, 147 S. E., 927), and the Federal Courts likewise. See *Carter v. Atlantic Coast Line R. Co.,* 192 S. C., 441, 452, 7 S. E. (2d), 163, and note in 91 A. L. R., 1055.