**CARROLL v. UNITED STATES.**

Civ. A. No. 979.

United States District Court
W. D. South Carolina, W. D.

Dec. 21, 1949.

William I. Bouton, Greenville, S. C., for plaintiff.

Oscar H. Doyle, U.S. Atty., Anderson, S. C., Walter H. Hood, Asst. U.S. Atty., Greenville, C. S., for defendant.

WYCHE, Chief Judge.

In this action plaintiff seeks recovery of $1,000 from the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680, for damages to his automobile, resulting from a collision with a diesel-electric locomotive of the defendant at a place where the highway crosses defendant's railroad.

I viewed the scene of the collision and the approaches to it, with the consent, and in the presence of counsel for both parties, after having heard the testimony.

In compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

At about 3:30 o'clock p. m. on August 17, 1948, plaintiff's wife was driving his 1934 ·Ford Coach automobile, with her small child and young brother-in-law on the seat beside her, on an unimproved public road in Greenville County, South Carolina. The road was rough with deep ruts. It crosses the railway of the defendant at approximately right angles. Defendant's railroad runs from its railroad at the Greenville Air Base to Gantt Station, a junction point with a line of the Southern Railway Company, in a rural section for a distance of about six miles. Mrs. Carroll was using the car with her husband's consent and permission and for a family purpose. Plaintiff and his family lived about one mile from the scene of the collision, and plaintiff's wife was thoroughly familiar with the crossing at which the collision occurred. She had driven over it a number of times. Crossing railway signs, visible for a considerable distance, were erected on both sides of the railroad tracks.

Defendant's locomotive was electrically propelled. On the day of the collision it was being operated by its civilian employee, Noah E. George, while acting in the scope of his employment in returning to the Air Base from Gantt Station at the junction with the Southern Railway, and was pulling no cars at the time. Defendant's engineer, from his cab, while at a distance of about six hundred feet from the crossing, saw plaintiff's car approaching at a slow speed. The engineer did not sound the whistle or ring the bell, with which the locomotive was equipped, at a distance of at least five hundred yards from the crossing, but sounded the whistle a few seconds before the collision when he saw that plaintiff's wife was not going to stop

for the crossing. Mrs. Carroll approached the crossing at a speed of about fifteen to twenty miles per hour, and did not see the locomotive until she was only "a few feet" from the track, at which time, in an effort to avoid a collision, she turned the automobile toward her left, the direction from which the locomotive was coming, but so closely to the track that the steps on the right side of the locomotive struck the automobile, turning it back toward the right against the railway crossing sign. The car was knocked into the ditch, breaking the railway crossing sign. The occupants of the car were not injured. The defendant's locomotive was equipped with a governor which would not permit it to travel in excess of twenty miles per hour and it was traveling at a speed of twenty miles an hour when it came to the crossing. While at a considerable distance back down the road on which plaintiff's automobile was traveling, the driver's view to the left, from which the locomotive was approaching, was obstructed on the left side of the road by a bank and by weeds and peas growing in the fields. After passing such obstructions there was at least seventy feet from the crossing an unobstructed view for plaintiff's wife to have seen the approaching locomotive and to have brought the automobile to a stop before reaching the tracks of the defendant.

The plaintiff paid $300 for his automobile and after the collision was offered $40 for the salvage of the car. He paid wrecker and storage charges on the car in the amount of $27.50.

On September 9, 1948, the plaintiff filed with the War Department a claim for property damage to his automobile in the amount of $337.73, and on the 29th day of December, 1948, this claim was rejected and plaintiff was notified in writing of such rejection. Plaintiff instituted this action for the sum of $1,000. The complaint did not allege, nor was there any proof of, intervening facts relating to the amount of the claim, which was solely for the damage to plaintiff's automobile. Plaintiff did not present at the trial any evidence as to the amount of his claim which could not reasonably have been discovered at the time he presented his claim to the War Department.

## Conclusions of Law

Section 8354, Code of Laws of South Carolina 1942, is as follows: "Lines of two steam railroads crossing—when trains stop.—Whenever lines of two steam railroads cross each other on the same grade in this State, the trains shall be brought to a full stop before reaching the crossing: provided, that this section shall not apply where the crossing is equipped with interlocking devices, or signal lights, or semaphores or other safety appliances which shall indicate that the train may cross in safety, or where a flagman or watchman is stationed at the crossing and he signals that the train may cross in safety."

Section 8355, Code of Laws of South Carolina 1942, referring to signals to be given at railroad crossings is as follows: "Signals to be given at crossings.—A bell of at least thirty pounds weight and a steam or air whistle shall be placed on each locomotive engine or interurban car, and such bell shall be rung or such whistle sounded by the engineer or fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine or interurban car has crossed such highway or street or traveled place; and if such engine or car shall be at a standstill within less distance than one hundred rods of such crossing such bell shall be rung or such whistle sounded for at least thirty seconds before such engine or interurban cars shall be moved, and shall be kept ringing or sounding until such engine or interurban cars shall have crossed such public highway or street or traveled place: provided, that a gong of not less than ten inches in diameter may be placed upon interurban cars in lieu of a bell as herein required and shall be sounded as herein provided."

Section 8377, Code of Laws of South Carolina 1942, describes the consequences for neglect to give signals required by Section 8355, and is as follows: "Injuries at crossings—penalty and damages.—If a

person is injured in his person or property by collision with the engines or any car or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding section, unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence or unlawful act contributed to the injury."

Section 8254, Code of Laws of South Carolina 1942, purports to give certain definitions and to whom applicable, and is as follows: "Definition of terms—to whom applicable.—In the construction of this chapter, except where such meaning would be repugnant to the context or contrary to the manifest intention of the Legislature, the phrase 'railroads and railways' shall be construed to include all railroads and railways operated by steam, except marine railways doing business as common carriers in this State, and whether operated by the corporations owning them or by other corporations or otherwise; 'railroad' shall be construed to mean a railroad or railway operated by steam power. The terms 'railroad corporation' or 'railroad company' contained in the law of this State shall be deemed and taken to mean all corporations, companies or individuals now owning or operating, or which may hereafter own or operate, any railroad, in whole or in part in this State, and the provisions of this law shall apply to all persons, firms and companies, and to all associations as common carriers upon any of the lines of railroads in this State (street railways and express companies excepted), the same as to railroad corporations hereinafter mentioned."

Section 7747, Code of Laws of South Carolina 1942, relating to certain powers of business corporations to construct and operate a railroad, electric railway, tramway, turnpike or canal for their own use and purposes, is as follows: "Additional powers.—Corporations organized for any purpose under the provisions of this article shall have power to construct and operate a railroad, *electric railway*, tramway, turnpike or canal for their own use and purposes, and shall have the right to effect a crossing with any existing railroad or public roads as is now provided by law for railroad corporations; but they shall have no power to condemn lands except for crossing any existing railroad or public road, as herein provided." (Emphasis added.)

Section 8482, Code of Laws of South Carolina 1942, defines an interurban railway as follows: "* * * the phrases 'interurban railroad' or 'interurban railway' shall be construed to include all railroads and railways operated by electricity whose main business consists in the transportation of passengers from one municipality to another."

On May 6, 1914, the Supreme Court of South Carolina, in construing the then railway crossing statutes, Sections 3222 and 3230, Code of Laws of South Carolina 1912, decided that, notwithstanding that the charter of an interurban electric railway company granted under the general law, provided that it should be subject to all of the liabilities of railroad corporations embraced in the general law, Section 3222, Code of Laws of South Carolina 1912, requiring the ringing of a bell or blowing of a whistle five hundred yards from a public highway crossing and that the bell be kept ringing until the engine crossed the highway, would not be applicable to electric railroads. Campbell v. Greenville, S. & A. Railway Company, 97 S.C. 383, 81 S.E. 676.

In 1919, the General Assembly of South Carolina amended the crossing statutes by adding the words "or interurban car", "or air whistle", "or motorman" and "or any car or cars", which it will now be seen appear in the present statutes as Sections 8355 and 8377, Code of Laws of South Carolina, 1942.

In the case of Crawford v. Mullins Lumber Co., 110 S.C. 318, 96 S.E. 494, it was admitted that the Mullins Lumber Company

operated a logging railroad in the neighborhood of the plaintiff's lands, and that these lands were damaged by fire originating on the right-of-way of the defendant's tramroad. The appeal presented for the Court's consideration the question whether a domestic corporation, which, incident to its private business, operates a logging railroad, comes within the purview of what was then Section 4910, Code 1922, the statute making a railroad company liable for damages for fire, etc. The Court, construing this Section, held that the definition given the word "railroad" in Section 4763, Code of 1922, now Section 8254, Code of Laws of South Carolina 1942 was controlling as to the meaning to be given that word wherever it occurred in the chapter, and that the defendant company was liable under the Statute, for the reason that "it was a railroad operated by steam."

Later in the case of Law v. Prettyman & Sons, 149 S.C. 178, 146 S.E. 815, 817, the State Court said: "We have been unable to find, after most careful study of the question presented, any good reason for overruling or modifying the decision in the Crawford Case. Whatever criticism may be made of the Court's alleged failure to fully consider the law in its opinion in that case, we think that the conclusion there reached expresses the manifest intention of the Legislature in its enactment of the law. There appears to be some inconsistency in the definitions given the terms 'railroads and railways,' 'railroad,' and 'railroad corporation,' in section 4763 (now Section 8254, Code of Laws of South Carolina 1942) which leads to confusion as to whom an action may be brought against under section 4910 (the fire damage statute). Under these conditions the court, in construing the statute, will look to 'the mischief sought to be avoided and the remedy intended to be afforded' by its enactment."

Subsequently, in the case of Engelberg v. J. F. Prettyman & Sons, 159 S.C. 91, 156 S.E. 173, an action was brought for damages for personal injuries alleged to be due to defendant's negligent operation of its logging railroad, whereby plaintiff was injured in a collision, at a public highway crossing, between an automobile which he was driving and a logging train of the defendant. To sustain its contention that the appellant was a railroad corporation, respondent relied on Section 4763, Civil Code of South Carolina 1922, now Section 8254, Code of Laws of South Carolina 1942, and the interpretative cases of Crawford v. Mullins Lumber Co., supra, and Law v. Prettyman & Sons, supra. After reciting the provisions of Section 4321, Civil Code of South Carolina 1922,[1] now Section 7747, Code of Laws of South Carolina 1942, giving business corporations power to construct and operate a railroad, *electric railway,* tramway, turnpike or canal for their own use and purposes, and giving them the right to effect a crossing with any existing railroad or public road as was, and is, now provided by law, for railroad corporations, the Supreme Court of South Carolina said: "The grant of a right to cross a public highway by means of a railroad, which involves the operation of dangerous instrumentalities, necessarily carries with it a duty to observe due care for the protection of the public using the highway at the crossing. Such a duty devolves upon the railroad under the common law, *and the Legislature has seen fit to further enlarge that duty by requiring certain signals to be given, in a prescribed manner, at such crossings.* Section 4903, Chapter 52, Civil Code 1922 (now Section 8355, Code of Laws of South Carolina 1942). It will be noted that by Section 4321[1] (now Section 7747, Code of Laws of South Carolina 1942) ordinary business corporations are granted the same right to effect crossings with public highways as railroad corporations, and it would seem to follow by clearest implication that *they are also burdened with the same duties and liabilities in so far as such crossings are concerned.* It would be an anomalous situation if an ordinary business corporation should be given the privilege of crossing public highways to the same extent and in the same manner as if it were a railroad corporation, but should be absolved from the duties and respon-

1. Section 1895, Civil Code 1902; Section 2852, Civil Code 1912.

sibilities to the public with which such privilege is burdened in the hands of a railroad corporation. This would be a discrimination lacking in appeal either to reason or to conscience, and we cannot believe that such was *the intent of the Legislature.*

"A like question was passed upon in the case of Ex parte Bacot, 36 S.C. 126, 15 S.E. 204, 207, 16 L.R.A. 586, which involved a statute generally similar to, but subsequently replaced by, section 4321 above quoted. In that case it was attempted, in effect, to enjoin a mining company from procuring a rightofway for a private railroad; one of the grounds being that the proposed railroad would cross a public highway without authority to do so. On this point it was held that, as the company had the power to construct and operate the railroad, the general law upon the subject of public highway crossing was applicable 'to this proposed railroad as well as to others.' The soundness of that position cannot be questioned, and by the application of the same principle in the case at bar we can reach no other conclusion than *that all general laws, whether common law or statute, relating to highway crossings by railroad corporations,* are applicable in the case at bar to the appellant, which is therefore a railroad corporation for the purposes of this suit." (Emphasis added.)

█ The Engelberg case, while not saying so, overrules the Campbell case. I am, therefore, bound by the Engelberg case.

The railroad built by the defendant, from the tracks of the Southern Railway Company at Gantt Station to its Greenville Air Base, was operated by a diesel-electric engine. While the Engelberg case did not refer to the amendment of 1919, it did refer to and did construe Section 4321, Civil Code of 1922,[1] now Section 7747, Code of Laws of South Carolina 1942, which has reference to the construction and operation of an *electric railway* by business corporations for their own use and purposes, giving such corporations the right to effect a crossing with any public road as is now provided by law for railroad corporations.

█ The Federal Tort Claims Act, new Title 28, § 1346(b) provides: The United States District Courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The words "private person" include business corporations operating electric railways for their own use and purposes.

█ It is my opinion that the defendant in this case was required to comply with the crossing signal statutes of South Carolina, and its failure so to do made it liable for damages sustained by the plaintiff, unless the plaintiff was guilty of gross contributory negligence.

█ The testimony discloses that the defendant failed to comply with the railroad crossing signal statutes of South Carolina, that it did not ring the bell or sound the whistle until it was a few feet from the crossing. The testimony further discloses that plaintiff and his family lived about one mile from the scene of the collision and that plaintiff's wife was thoroughly familiar with the crossing at which the collision occurred; she had driven over it a number of times; crossing railway signs, visible for a considerable distance, were erected on both sides of the railroad tracks; there was a clear and unobstructed view of the tracks and of the approaching engine for at least seventy feet from the crossing; Mrs. Carroll approached the crossing within a clear view of the approaching engine, unmindful of the warning signs, and failed to keep a proper look-out and to look and listen, until she saw the engine a few feet from her before the collision. Under such evidence,

---

1. Section 1895, Civil Code 1902; Section 2852, Civil Code 1912.

the Supreme Court of South Carolina has held that Mrs. Carroll was guilty of gross contributory negligence. Arnold v. Charleston & West. Car. R. Co., 213 S.C. 413, 49 S.E.2d 725; Breeden v. Rockingham R. Co., 193 S.C. 220, 8 S.E.2d 366; Taylor v. Powell, et al., 195 S.C. 486, 12 S.E.2d 27.

The negligence of Mrs. Carroll in driving the automobile must be imputed to the plaintiff, her husband, since she was using it with his permission and for a family purpose. Hewitt v. Fleming et al., 172 S.C. 266, 173 S.E. 808.

Therefore, the plaintiff's claim must be denied, and the action dismissed, because of the gross negligence on the part of his wife which contributed as a proximate cause to the collision.

For the foregoing reasons I find it unnecessary to pass upon defendant's motion made at the close of plaintiff's case to dismiss the action on the ground that it had been instituted for a sum, to wit, $1,000, in excess of the amount of the claim, to wit, $337.73, presented to the War Department.

Entry of appropriate judgment is directed accordingly.